Earl HARRIS, Plaintiff,

v.

Margaret M. HECKLER, Secretary of Health and Human Services, Defendant.

No. C–84–0002 SC.

United States District Court, N.D. California.

Oct. 4, 1984.

Kim Malcheski, Malcheski, Parker & Randolph, San Francisco, Cal., for plaintiff.

Joseph P. Russoniello, U.S. Atty., Patrick S. Bupara, Chief Civ. Div., Asst. U.S. Atty., San Francisco, Cal., for defendant.

## ORDER RE MOTIONS FOR SUMMARY JUDGMENT AND REMAND

CONTI, District Judge.

Plaintiff brings this action pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Secretary of Health and Human Services ("Secretary") denying his claim for disability insurance benefits. The Secretary's findings must be supported

by substantial evidence and the Secretary must have applied the proper legal standards in denying plaintiff's claims. *Delgado v. Heckler,* 772 F.2d 570, 572 (9th Cir. 1983).

The term "disability" is defined by section 223(d)(1)(A) of the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting at least one year. 42 U.S.C. § 423(d)(1)(A). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The claimant has the initial burden of establishing that he is unable to do his previous work, but once the claimant has made such a showing the burden shifts to the Secretary to show that there is other substantial gainful activity that the claimant can perform. *Bonilla v. Secretary of HEW,* 671 F.2d 1245, 1246 (9th Cir.1982). Under certain "medical-vocational guidelines" ("grids") promulgated by the Secretary, *see* Appendix 2 of Subpart P, 20 C.F.R. § 404.1501 *et seq.,* a claimant will be found capable of "other substantial gainful employment" if he meets certain age, educational, skill and exertional requirements.

Plaintiff applied for disability insurance benefits on December 15, 1981, alleging August 18, 1976, as the date he became disabled to the point that he could no longer work. The application was denied initially, and plaintiff filed for reconsideration. The request for reconsideration was subsequently denied, and plaintiff then filed a request for a hearing. The hearing was held before an ALJ on March 14, 1983. In a decision dated June 28, 1983, the ALJ concluded that plaintiff was not under a disability as defined by the Social Security Act. Plaintiff requested review of the decision by the ALJ. On November 4, 1983, the Appeals Council affirmed the ALJ's decision and the decision then became the final decision of the Secretary. Plaintiff filed his complaint with the court in timely fashion on January 3, 1984 seeking judicial review pursuant to 42 U.S.C. § 405(g).

Plaintiff has twice previously applied for and been denied disability insurance benefits after administrative hearings. He did not seek judicial review in either case. Plaintiff first applied on March 30, 1977, and that application was denied on May 8, 1979. He then applied again on February 7, 1980, and that application was denied on July 20, 1981.

Plaintiff was born on May 28, 1927. He last worked as a San Francisco "Muni" bus driver in August, 1976, when he was taken off work and placed on disability pension because of his diabetes mellitus and chest pain. Plaintiff began working this job on July 1, 1957. He previously worked for the U.S. Postal Service from January, 1955 until June 30, 1957 as a truck driver. Plaintiff served in the U.S. Army from August, 1952 until July, 1954 as an automobile maintenance mechanic. Plaintiff has completed the eleventh grade of high school. Other than attending auto mechanic maintenance school in the Army, he has no other special job training or vocational schooling.

Plaintiff's medical difficulties began in May, 1976 when he was diagnosed as having diabetes mellitus. In 1976 he reported experiencing dizziness, blurred vision, double vision, and ringing in his ears (tinnitus). At a VA hospital in 1977, plaintiff was diagnosed as having hypertension and possibly angina, and he was prescribed medicine, including nitroglycerin, dramamine, and valium.

On February 26, 1979, Dr. Robert A. Blau stated of plaintiff that:

> Mr. Harris is totally disabled to perform gainful employment. He has diagnoses of hypertension, chronic atherosclerotic heart disease with coronary insufficiency, diabetes mellitus which is not controlled and labyrinthine disease, bilateral, possible secondary to atherosclerois producing lightheadedness, dizziness and incoordination. Obviously, Mr. Harris is

an individual who has a myriad of medical problems most of which are on-going and will inter-relate adversely with one another. This particularly relates to the hypertension and diabetes which will undoubtedly contribute to further progression of the coronary atherosclerosis and ischemia, and also to continuing problems with balance and coordination. Emotional stress, which he would experience in a job situation, would most probably adversely effect his hypertension, angina, diabetes and the dizziness which he continues to experience.

Plaintiff's current treating physician, Dr. Gerald Charles, diagnosed plaintiff's impairments in March, 1983 to include the following: hypertension; diabetes mellitus; arteriosclerotic heart disease; headaches variously diagnosed as tension, migraine, cluster or facial neuralgia; jaw pain; tinnitus; and abnormality of eye movement.

In April, 1983 plaintiff underwent a psychiatric examination. Dr. Joseph Karis diagnosed plaintiff's emotional condition as including psychological factors affecting his physical condition, a moderate and chronic dysthymic disorder, and a passive-aggressive personality disorder.

Plaintiff had surgery in June, 1982 for colon polyps. In July, 1982 he underwent a hemicolectomy on a portion of his right colon. Plaintiff suffers from irregular bowel movements, and experiences swelling in his rectum if he sits or stands for 20 to 30 minutes.

At his hearing before the ALJ in this action, plaintiff testified that his diabetes is "up and down" and that he feels "bad" all of the time. Plaintiff stated that he conducts a sugar test of his urine every morning. He testified that he suffers from mild headaches practically every day, and that he has "attacks" two or three times a month when he must go to bed. Plaintiff further stated that he gets dizzy, loses his balance, and has blurred vision.

Plaintiff also indicated that he gets chest and back pain when he tries to clean up around the yard. He stated that he walks for exercise every day, but that he gets chest and back pain if he walks for too long or has to carry packages. Plaintiff further testified that he suffers from shortness of breath along with his chest pain, and that he takes nitroglycerin tablets for the chest pain.

The ALJ in this action determined that plaintiff was not disabled by finding that plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567. The Secretary urges that this finding was supported by substantial evidence, especially in light of the prior two administrative decisions denying plaintiff disability benefits. The Secretary contends that the previous administrative decisions of October 13, 1978 and July 20, 1981 are *res judicata* and are non-reviewable decisions establishing that plaintiff was not disabled at any time up to the latter date. The court agrees, as the Secretary accurately relies on *Lyle v. Secretary of HHS,* 700 F.2d 566, 568 (9th Cir.1983), for this proposition. *Lyle* further establishes that the July 20, 1981 decision which found that plaintiff was capable of performing light work creates a presumption that plaintiff continues to possess this capability, and plaintiff thus has the burden of presenting evidence of change in his medical condition such that he no longer is able to do light work. *Id.* at 568–69.

The Secretary also argues that the court should not consider any evidence of plaintiff's change of medical condition subsequent to March 31, 1982, the date plaintiff last met the special earnings requirement of the Social Security Act. This contention is also meritorious, as *Steimer v. Gardner,* 395 F.2d 197, 198 (9th Cir.1968), establishes that the pertinent date for determining a claimant's right to disability benefits is the date when the claimant's insured status terminates. Consequently, plaintiff has the burden of establishing that his medical condition worsened between July 21, 1981 and March 31, 1982 such that he is no longer able to perform light work. The decision of the ALJ in plaintiff's second case, dated July 20, 1981,

recognized that plaintiff had the following impairments: diabetes mellitus, hypertension, coronary artery disease with angina pectoris, and anxiety and depression. Nevertheless, the ALJ concluded as final up to that time that plaintiff was not disabled and was capable of performing light work. Accordingly, plaintiff must demonstrate that these conditions worsened, or that he has developed new medical conditions, in the above intervening time period which preclude him from doing light work.

Light work is defined by 20 C.F.R. § 404.1567(b) as follows:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

Three items of medical evidence principally speak to the evolution of plaintiff's medical condition between July 21, 1981 and March 31, 1982. On September 23, 1981 a medical report from Dr. Charles Simonton revealed that plaintiff had angina pectoris, hypertension, and diabetes mellitus. Dr. Simonton also noted that plaintiff had multiple somatic complaints, including headaches evaluated by neurology without obvious etiology, dizziness, intermittent blurred vision and diplopia, and multiple arthralagias with neck and back pains. Dr. Simonton found no evidence of congestive heart failure, acute cardiopulmonary disease, or cardiomegaly. Dr. Simonton mentioned that plaintiff's exertional capacity was limited to a sedentary level, but the court concludes that this medical report does not bring to light any change in plaintiff's medical condition that was not before the ALJ in plaintiff's last case, and that this report thus does not overcome the presumption that plaintiff can perform light work.

On January 27, 1982, a cardiac stress test was performed on plaintiff. This test revealed pain consistent with angina, but it did not suggest ischemic ST changes or arrhythmias. This evidence reports no change in plaintiff's condition that was not before the ALJ in the previous case.

Finally, plaintiff was examined by Dr. Fredric Mintz on January 21, 1982. Plaintiff reported that he was walking five to six blocks daily, but complained of occasional shortness of breath even when not exerting himself. Dr. Mintz reviewed the cardiac stress test of January 27, 1982, and it was his opinion that the test indicated left axis deviation, consistent with left anterior vascular block, a right sided conduction delay, and non-specific ST segment and T wave abnormalities. Dr. Mintz noted that during the treadmill testing and during the post-treadmill rest period, there were no significant increases in ST segment abnormalities and no arrhythmias were observed. Dr. Mintz concluded that although in his opinion plaintiff could not return to work as a bus driver, plaintiff could engage in light work in a standing or walking position, with a minimum demand for physical effort. This evidence and Dr. Mintz' conclusions do not indicate such a worsening in plaintiff's condition that he is no longer able to do light work. Thus, it is the court's conclusion that plaintiff has not presented sufficient evidence from July 21, 1981, to March 31, 1982, that rebuts the *Lyle* presumption that plaintiff continues in his ability to do light work.

Although plaintiff has not overcome the presumption that he retains the capacity to perform light work and is not disabled, because the ALJ in this case acknowledged that plaintiff is unable to perform his past relevant work as a bus driver, the Secretary nevertheless has the burden of proving that other substantial gainful activity

exists in the national economy which plaintiff can perform. *Bonilla v. Secretary of HEW*, 671 F.2d 1245, 1246 (9th Cir.1982).

Under Rule 202.03 of 20 C.F.R. § 404, Appendix 2, Subpart P, the ALJ found, as required by this rule, that plaintiff had "skilled" or "semiskilled" skills that were transferable to light work situations. The ALJ stated in his decision of June 29, 1983:

> Under Rule 202.03 of the Medical/Vocational guidelines as set forth at Appendix 2, a finding of "not disabled" is required regardless of the adversity of age or whether the individual's formal education is commensurate with his or her demonstrated skill level. The acquisition of work skills demonstrates the ability to perform work at the level of complexity demonstrated by the skill level attained regardless of the individual's formal educational attainments. The claimant has a twenty year work history as a Muni bus driver, a 3 year work history as a post office driver and a 2 year work history as an Army maintenance mechanic. These skills are readily transferable to occupations such as truck/bus dispatcher, self-service gas station attendant, truck/car rental agent.

The ALJ concluded that "there are other jobs which the claimant could perform and that such jobs exist in significant numbers in the national economy".

"Transferability of skills" is defined in 20 C.F.R. § 404.1568(d) as depending "largely on the similarity of occupationally significant work activities among different jobs." Transferability is most probable and meaningful among jobs where (1) the same or lesser degree of skill is required; (2) the same or similar tools and machines are used; and (3) the same or similar materials, products, etc., are involved. 20 C.F.R. § 404.1568(D)(2). The Secretary has not adequately demonstrated to the court that the plaintiff has the skills the ALJ identified ("the ability to work with various types of individuals, pay close attention to details, understand truck and bus operations, etc."), nor that these skills are transferable to the three specific jobs the ALJ

identified ("truck/bus dispatcher, self-service gas station attendant, and truck/car rental agent"), nor that plaintiff is qualified and able to meet the requirements of these specific jobs.

It is the court's conclusion that the use of a vocational expert would have aided the ALJ in addressing the above issues. Although vocational expert testimony is not required, "[o]rdinarily, the better method to demonstrate [transferability of skills to specific jobs] is through testimony of a vocational expert." *Hall v. Secretary of HEW*, 602 F.2d 1372, 1377 (9th Cir.1979). The court so concludes because the ALJ failed to show *specifically* what types of skills plaintiff acquired as a bus driver and whether he still retains these skills. Furthermore, the ALJ failed to indicate the specific requirements of the three jobs that plaintiff allegedly has the ability to perform, and whether plaintiff is able to meet those requirements.

The importance of vocational testimony is demonstrated by scrutinizing the job (transit) bus dispatcher, which the ALJ suggested plaintiff can perform. The Dictionary of Occupational Titles defines the occupation of (transit) bus dispatcher as "light" indoor work, but it has specific math, language, and vocational training time requirements. Vocational testimony would clarify whether plaintiff meets these specific requirements.

Thus, the court reasons that even though plaintiff is not disabled and is capable of performing light work, this case must be remanded, pursuant to 42 U.S.C. § 405(g), to the Secretary for further proceedings involving the use of a vocational expert to determine whether plaintiff's skills are transferable to "light work" occupations that exist in the national economy.

In accordance with the foregoing, it is hereby ordered that this case is remanded to the Secretary for further proceedings.