Keith CHRISTENSEN, Plaintiff,

v.

Otis R. BOWEN, Secretary of Health and Human Services, Defendant.

No. C–85–3326 SC.

United States District Court, N.D. California.

April 28, 1986.

Harvey P. Sackett, San Jose, Cal., for plaintiff.

John P. Russoniello, U.S. Atty., San Francisco, Cal., for defendant.

## ORDER

CONTI, District Judge.

Plaintiff brings this action pursuant to section 205(g) of the Social Security Act ("Act"), 42 U.S.C. section 405(g), to obtain judicial review of a "final decision" of the Secretary of Health and Human Services ("Secretary"), denying his claim for disability insurance benefits ("DIB").

The matter is presently before the court on defendant's motion for remand and both parties' motions for summary judgment.

■ In order to be affirmed on appeal, the Secretary's findings must be supported by substantial evidence and the Secretary must have applied the proper legal standards in denying plaintiff's claims. *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983). If the Secretary's findings are not supported by substantial evidence *or* are based upon a legal error, the Secretary's denial of benefits must be set aside. *Kail v. Heckler*, 722 F.2d 1496 (9th Cir.1984). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and it must be based on the record as a whole. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

■ An individual is disabled under the Act if he is unable to,

"engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."

42 U.S.C. section 423(d)(1)(A). The impairment must be "of such severity that the claimant is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. section 423(d)(2)(A). The claimant has the initial burden of establishing that he is unable to do his previous work, but once the claimant has made such a showing the burden shifts to the Secretary to come forward with specific findings showing that there is other substantial gainful activity that the claimant can perform. *Bonilla v. Secretary of HEW*, 671 F.2d 1245, 1246 (9th Cir.1982); *Hall v. Secretary of HEW*, 602 F.2d 1372, 1375 (9th Cir.1979). Under the "medical-vocational guidelines" ("grids") promulgated by the Secretary, *see* Appendix 2 of Subpart P, 20 C.F.R. section 404.1501 *et seq.*, a claimant will be found capable of "other substantial gainful employment" if he meets certain age, educational, skill and exertional requirements.

While the medical-vocational guidelines provide some evidence of a claimant's ability to engage in substantial gainful work, however, it is well established that they are not of themselves sufficient to meet the Secretary's burden of proving nondisability. In *Lightfoot v. Mathews*, for example, this court held that a disability claimant's capacity to work "must be assessed in terms of age, education, work experience and impairments," and that "[t]his requires a finding of capacity to work which is expressed in specific kinds of jobs ... not simply in terms of catch-all categories." 430 F.Supp. 620, 621 (N.D.Cal.1977). Similarly, in *Hall v. Secretary of HEW*, the Ninth Circuit Court of Appeals stated that the Secretary must "come forward with specific findings showing that the claimant has the physical and mental capacity to perform specified jobs," and that "the better method to demonstrate this is through the testimony of a vocational expert," although such testimony "would not be required when the availability of work is established by other reliable evidence." 602 F.2d 1372, 1377 (9th Cir.1979). Al-

though one court in this circuit has held that the medical-vocational guidelines supply the "other reliable evidence" required by *Hall* (*see Simonsen v. Secretary of Health and Human Services*, 512 F.Supp. 1064 (S.D.Cal.1981)), the rule in this district is that they do not. *See Allen v. Schweiker*, 546 F.Supp. 623, 625 (N.D.Cal. 1981); *Ibarra v. Schweiker*, 543 F.Supp. 49, 52 (N.D.Cal.1981); *Davis v. Schweiker*, 536 F.Supp. 90, 95 (N.D.Cal.1982).

## I. BACKGROUND.

Plaintiff in this case filed an application for DIB on November 17, 1983, alleging inability to work since May 6, 1983. The application was denied initially and on reconsideration by the Social Security Administration ("SSA"). Accordingly, plaintiff filed for a hearing before an administrative law judge ("ALJ") pursuant to 42 U.S.C. § 405(b). On March 7, 1985, the ALJ determined that plaintiff retained the residual functional capacity to perform work that did not involve high levels of stress, and therefore was not disabled. The Appeals Council affirmed the ALJ's findings on April 23, 1985, whereupon plaintiff filed the present action with this court.

Plaintiff is a 56-year old male who has a Bachelor's degree from Sacramento State College. His work history consists of 36 years of uninterrupted employment with Sears Roebuck Company as an operating superintendent and operating manager. When he last worked, he was responsible for the hiring, firing and discipline of 380 employees (Tr. at 18), in addition to the implementation of budgetary guidelines from Sears headquarters in Chicago (Tr. at 49–50). He worked a minimum of 10 hours per day and sometimes worked as many as 12 to 16 hours per day (Tr. at 221).

Plaintiff's alleged disability began in May 1983. At that time he consulted Dr. Thomas Ball for symptoms of significant work-induced stress, including severe depression, crying spells, suicidal tendencies, chronic fatigue, loss of appetite and a decreased sexual drive. Tr. at 206–07. Pursuant to the recommendations of Dr. Ball

and plaintiff's work supervisor, plaintiff took a leave of absence from his job for a five-week period. Plaintiff returned to work on July 5, 1983. He continued to experience serious mental problems, including illegible handwriting, speaking with hesitation, difficulty in composing his thoughts, and a fear of leaving his office. Consequently, plaintiff again left work at Sears on August 7, 1983, and has not worked since.

Dr. Ball continued to treat plaintiff throughout 1983 and 1984. Dr. Ball prescribed Adapin, Xanax, and Halcion. In a report dated June 25, 1984, Dr. Ball indicated that plaintiff's "domestic activities" were unaffected by his mental condition, with the exception of sleeping difficulties, and that plaintiff's capacity to cope with the pressures of ordinary work seemed to be average. He noted, however, that plaintiff had no inclination to return to the stressful circumstances of his previous managerial position, but felt himself more capable of functioning in a work situation that was primarily physical (Tr. at 17). In a subsequent report dated September 11, 1984, Dr. Ball described plaintiff's psychiatric symptoms as few, mild, and "not incapacitating." (Exhibit 19 to ALJ's memorandum of decision.)

In a consultative psychiatric evaluation dated August 14, 1984, Kathryn H. Knutsson, M.D. gave the following impression:

This patient could benefit from appropriate anti-depressant medication and talking type of psychotherapy. He is bottled up within himself; is very self-critical. If he is able to learn new skills he would be able to work on for many years. When I saw him on 12/20/83 he was obviously not ready to return to work.

Tr. at 172. In a report dated September 17, 1984, Robert C. Burr, M.D., stated:

He seems to have many of the anal-compulsive character traits often seen in people who are predisposed to depression. At present he *seems to be able to function adequately as long as he is placed in a sheltered environment in which very little is actually required of him.*

*The idea of returning to the competitive work world seems to produce instant anxiety.*

Mr. Christensen is obviously doing better than he did when he was still working at Sears in the summer of 1983. He does not appear to have recovered to the point where he could return to work.

Tr. at 189 (emphasis added). Donald L. Tasto, Ph.D., also conducted a consultative psychological evaluation of Mr. Christensen. In his report dated January 10, 1985, Dr. Tasto stated:

I think that, *because of his memory problems, concentration difficulties and fatigability, Mr. Christensen is presently unable to hold a job with much responsibility or one that requires much stamina, ability to recall, or intense concentration.* I think it is an unanswered question at this point as to whether he will be able to handle something more demanding in the future. It is quite possible his symptoms will change as he changes his use of medication. *This issue aside, I do not think that Mr. Christensen will ever be able to return to a job with a high degree of stress like he had when working for Sears.* Whether or not his intellectual capabilities return as a result of changing medication usage, I think *his capability to deal with stress has been permanently reduced and he, therefore, must be precluded from any job where stress is more than moderate and periodic.*

Tr. at 199–200 (emphasis added). The most recent assessment of residual functional capacity was rendered by Bradley M. Greenblott, M.D. In his report dated February 8, 1985, Dr. Greenblott concluded:

At the present time, Mr. Christensen is clearly totally temporarily disabled from a psychiatric standpoint. *He is unable to tolerate even minimal stress, and can in no way handle competitive employment.* I do not believe that he is capable of re-training programs at the present time. The extent of his depression does not allow for this.

Tr. at 224 (emphasis added).

In rejecting the above findings and conclusions regarding plaintiff's residual functional capacity, the ALJ stated that plaintiff's disability claim was not supported by "... the reported clinical findings and laboratory test results." Tr. at 16. Specifically, the ALJ found that the conclusions of Drs. Knutsson and Burr regarding plaintiff's inability to return to his previous work were unsupported by clinical findings which indicated, *inter alia*, that plaintiff's memory was intact, that his intelligence was average, that he exhibited no psychotic symptoms, that he was able to engage in certain leisure activities, and that there were some indications of improvement in his overall mental condition. The ALJ cited no clinical findings, however (and the record reveals none), which indicated that plaintiff was able to engage in any forms of employment which involved even minimal amounts of stress. Rather, the ALJ merely noted that Dr. Burr's report "... *does not rule out* other, less stressful forms of substantial gainful activity." Tr. at 17 (emphasis added). The ALJ did not address the findings of Drs. Tasto and Greenblott, and made no findings whatsoever regarding plaintiff's ability to engage in other types of work based on plaintiff's age, education, prior work experience and residual functional capacity.

## II. DISCUSSION.

### A. *Defendant's Motion to Remand.*

Defendant's motion to remand is based on his argument that automatic remand is mandated by § 5(c) of the 1984 Disability Benefits Reform Act ("Disability Amendments"). That section, entitled "Moratorium on Mental Impairment Reviews," provides that disability determinations on applications involving mental impairments could be made in accordance with current guidelines until new regulations were promulgated, but that any *unfavorable* decisions made after enactment must be reviewed after the newly revised regulations

have been published. Section 5(c)(1) states, in pertinent part, as follows:

> Any *initial* determination that an individual is *not* under a disability by reason of a mental impairment and any determination that an individual is *not* under a disability by reason of a mental impairment *in a reconsideration of or hearing on an initial disability determination* made . . . after the date of the enactment of this Act and prior to the date on which revised criteria are established . . . and any determination that an individual is *not* under a disability by reason of a mental impairment *in a reconsideration of, hearing on, review by the Appeals Council of, or judicial review of a decision rendered in any continuing eligibility review* . . ., shall be redetermined by the Secretary as soon as feasible after the date on which such criteria are so established, applying such revised criteria.

Disability Amendments Reform Act, Pub.L. No. 98–460, § 5(c)(1), 98 Stat. 1794, 1801–02 (1984) (emphasis added). Since the Secretary's determination of nondisability in this case was issued subsequent to the enactment of the Disability Amendments, but prior to the publication of the revised regulations, defendant contends that remand for re-evaluation under the new listings for mental impairments is mandated by § 5(c)(1) of the Disability Amendments. The court disagrees.

■ A more logical construction of the statute would indicate that it requires re-evaluation under the new criteria of any cases which result in a finding of *nondisability* upon judicial review. Nowhere does the statute mention remand, much less mandatory remand, of cases which result in a finding of *disabled* on judicial review.

■ Moreover, where, as here, a court finds that there is no substantial evidence to support a finding of nondisability under *either* the original or revised listings, remand for re-evaluation would be illogical and inconsistent with the remedial purposes of the Disability Amendments. As the court stated in *Stewart v. Heckler*, a case involving essentially the same issue as that presented here:

> In this case, the Court adopted the Magistrate's decision which, *inter alia*, applied the "medical improvement" standard which the new law explicitly requires. If the Secretary's motion to "reargue" were granted, plaintiff could not hope to recover the benefits he lost in the April, 1983 termination decision until the Secretary "redetermines" his claim under "medical improvement"—the standard already applied by the Magistrate and the Court in the instant action, a process that could take a considerable period of time.
>
> Should the Secretary again decide against the plaintiff on the grounds of "medical improvement," the matter would again wend its tortured way to a district court for review. In essence, the "medical improvement" claim would be litigated twice under the same standard. . . .
>
> In passing the new legislation Congress could not reasonably have intended a result so at variance with the remedial purposes of that legislation.

599 F.Supp. 298, 300–01 n. 6 (S.D.N.Y. 1984). As in *Stewart*, a remand in the present case would result in one of two possibilities. Either the Secretary would find plaintiff disabled under the new guidelines, or he would again decide against plaintiff, in which case there would be a second appeal to this court based on the same issues as are presently before it. In either case, remand would serve no purpose whatsoever, other than to delay the receipt of benefits. Under such circumstances, remand is inappropriate. *See Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir.1981) (where rehearing would simply delay receipt of benefits, reversal is appropriate).

*B. The Parties' Cross-Motions for Summary Judgment.*

Plaintiff's motion for summary judgment is three-pronged. First, he argues that inasmuch as the ALJ's decision gave little or

no weight to the specific clinical findings of Drs. Knutsson, Burr, Tasto, and Greenblott, quoted above, his determination of non-disability was not supported by substantial evidence. Second, plaintiff contends that the ALJ committed legal error by failing to follow the Secretary's own policy promulgations regarding the evaluation of chronic mental impairments. Finally, plaintiff argues that since the ALJ himself conceded that plaintiff could not return to his former employment, the Secretary bears the burden of proof regarding what specific jobs plaintiff can perform. Plaintiff contends that the Secretary has not met that burden. For the reasons set forth below, the court agrees with plaintiff.

As noted above, substantial evidence means that a finding is supported by "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Thus, the Ninth Circuit stated in *Walker v. Mathews* that

> [i]n applying the substantial evidence test, we are obligated to look at the record as a whole, and not merely at the evidence tending to support a finding 546 F.2d 814, 818 (9th Cir.1976), and that '[i]n determining whether there is substantial evidence to support the examiner's finding, a reviewing court must consider both evidence that supports, and evidence that detracts from, the examiner's conclusion. We cannot affirm the examiner's conclusion simply by isolating a specific quantum of supporting evidence.'

*Id.* at n. 6 (quoting *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir.1975)). *See also*, Davis, 4 *Administrative Law Treatise* § 29.03 (1958) (" '... Evidence which may be logically substantial in isolation may be deprived of much of its character or its claim to credibility when considered with other evidence.' ")

■ Applying these principles to the present case, the court concludes that Dr. Ball's findings to the effect that plaintiff's

impairments were "not incapacitating" (Tr. at 17), when considered together with the findings of the four remaining doctors who examined plaintiff and emphatically concluded to the contrary, does not constitute substantial evidence sufficient to support a finding of nondisability.

Plaintiff's second argument is that the ALJ erred both in giving improper weight to the findings of Drs. Knutsson, Burr, Tasto and Greenblott, and in failing to follow the Secretary's own policy promulgations regarding the evaluation of chronic mental impairments.

■ In support of this argument, plaintiff notes that the ALJ evidently rejected the findings of the aforementioned doctors on the ground that they were not supported by "... the reported clinical findings and laboratory test results." Tr. at 16. Plaintiff correctly points out that objective demonstrability is not the correct standard to be applied in evaluating evidence of mental disorders. As the court stated in *Lebus v. Harris*,

> Courts have recognized that a psychiatric impairment is not as readily amenable to substantiation by objective laboratory testing as is a medical impairment and that consequently, the diagnostic techniques employed in the field of psychiatry may be somewhat less tangible than those in the field of medicine. In general, mental disorders cannot be ascertained and verified as are most physical illnesses, for the mind cannot be probed by mechanical devices in order to obtain objective clinical manifestations of mental illness. A strict reading of the statutory requirement that an impairment be 'demonstrable by medically acceptable clinical and laboratory diagnostic techniques,' 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(C), is inappropriate in the context of mental illness. Rather, when mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnoses and observations of professionals trained in the field of psychopathology. The report of a psychiatrist should not be rejected simply

because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation, unless there are other reasons to question the diagnostic technique.

526 F.Supp. 56, 60 (N.D.Cal.1981) (extensive citations omitted).

Were the findings of Drs. Knutsson, Burr, Tasto, and Greenblott properly considered under the *Lebus* standard, plaintiff argues, the ALJ would have found plaintiff's impairments to be of listed severity under either the original or the revised criteria. Assuming, *arguendo*, that plaintiff's impairments were not of listed severity, however, plaintiff contends that the ALJ failed to follow the Secretary's own policy promulgations regarding evaluation of mental impairments which are of less than listed severity. The court agrees with plaintiff.

Social Security Ruling 85–16 ("SSR 85–16"), which became effective on April 1, 1985, some three weeks prior to the Appeals Council's final decision in this case, states in pertinent part as follows:

> For impairments of listing severity, inability to perform substantial gainful activity (SGA) is presumed from prescribed findings. However, with mental impairments of lesser severity, such inability must be demonstrated through a detailed assessment of the individual's capacity to perform and sustain mental activities which are critical to work performance. *Conclusions of ability to engage in SGA are not to be inferred from the fact that the mental disorder is not of listing severity.*
>
> . . . .
>
> Reports from psychiatrists and other physicians, psychologists, and other professionals working in the field of mental health should contain the individual's medical history, mental status evaluation, psychological testing, diagnosis, treatment prescribed and response, prognosis, a description of the individual's daily activities, and a medical assessment describing ability to do work-related activities. These *reports may also con-*

> *tain other observations and opinions or conclusions on such matters as the individual's ability to cope with stress, the ability to relate to other people, and the ability to function in a group or work situation.*
>
> *Medical documentation can often give clues as to functional limitation. For example, evidence that an individual is markedly withdrawn or seclusive suggests a greatly reduced capacity for close contact and interaction with other people. The conclusion of reduced RFC in this area can then be applied to all steps of vocational assessment. For example, when the vocational assessment establishes that the claimant's past work has been limited to work requiring close contact and interaction with other people, the preceding assessment would indicate that the claimant would be unable to fulfill the requirements of his or her past work. Therefore, the determination of disability in this instance would depend on the individual's capacity for other work.*

SSR 85–16 (C.E.1985) (emphasis added).

■ Upon a review of the record, the court finds that had the evidence of plaintiff's inability to cope with even minimal stress (Tr. at pp. 189, 199–200, 224), much less competitive employment (Tr. 189, 224), been evaluated in accordance with the factors listed in SSR 85–16, a finding of inability to engage in past relevant work would have been mandated. Since the ALJ erroneously failed to apply these factors to the evidence before him, his decision must also be set aside on this ground.

■ Finally, plaintiff argues that when he met his initial burden of establishing his inability to do his previous work as a retail supervisor, the burden shifted to the Secretary to show that he was capable of other types of work, and that the Secretary did not meet this burden. Here again, the court agrees with plaintiff.

In his memorandum of decision, the ALJ found that,

[w]hile the claimant's depressive symptoms might be exacerbated by a return to the level of responsibilities and pressures involved in his most recent work for Sears, he could perform other supervisory, managerial, or even lower level work without the unusually high level of stresses and pressures described in his past work.

Tr. at 19. Such a generalized finding, however, does not satisfy the requirement, under the law of this Circuit, that the Secretary make specific findings showing that there is other substantial gainful activity that the claimant can perform. As the Ninth Circuit stated in *Hall v. Secretary of Health, Education & Welfare,*

[a] general statement that a claimant may engage in "sedentary" work, without testimony by a vocational expert who can identify specific jobs, absent other reliable evidence of the claimant's ability to engage in other occupations, does not satisfy the substantial evidence test.

It is incumbent on the Secretary *at a minimum,* to come forward with specific findings showing that the claimant has the physical *and mental* capacity to perform *specified* jobs, taking into consideration the requirements of the job as well as the claimant's age, education and background.

602 F.2d 1372, 1377 (9th Cir.1979) (emphasis added; citations omitted). *See also, Bonilla v. Secretary of Health, Education & Welfare,* 671 F.2d 1245 (9th Cir.1982); *Davis v. Schweiker,* 536 F.Supp. 90 (N.D. Cal.1982); *Harris v. Heckler,* 597 F.Supp. 961 (N.D.Cal.1984). Since the Secretary has failed to meet this burden, and has not given any reasons for its failure, the court finds that reversal is warranted on this ground as well. *See Carroll v. Secretary,* 705 F.2d 638, 643–44 (2d Cir.1983) (remand should not be ordered when Administration fails to meet its burden of proof, absent showing of new and material evidence and good cause for the failure to provide such proof at the administrative hearing).

## III. CONCLUSION.

In accordance with the foregoing, it is hereby ordered that defendant's motion to remand is denied, and that plaintiff's motion for summary judgment is granted.