Francisca **SANCHEZ**, Plaintiff,

v.

**Kenneth S. APFEL, Commissioner of Social Security Administration, Defendant.**

No. CV 99–4006–RC.

United States District Court,
C.D. California.

Feb. 11, 2000.

on June 3, 1997. A.R. 40, 79–80. On November 1, 1997, the ALJ issued a decision finding that the plaintiff is not disabled. A.R. 10–19. The plaintiff sought review by the Appeals Council; however, review was denied on February 12, 1999. A.R. 3–9.

Joel D. Leidner, Los Angeles, CA, for Plaintiff.

Katherine M. Hikida, Asst. U.S. Atty., Office of U.S. Atty., Los Angeles, CA, for Defendant.

## MEMORANDUM DECISION AND ORDER

CHAPMAN, United States Magistrate Judge.

Plaintiff Francisca Sanchez filed a complaint on April 19, 1999, seeking review of the Commissioner's decision denying her application for disability benefits. The plaintiff filed a motion for summary judgment on September 13, 1999, and the defendant filed a motion to remand and opposition to plaintiff's summary judgment motion on December 1, 1999. The plaintiff filed a reply on December 10, 1999.

## BACKGROUND

### I

On January 11, 1995, the plaintiff applied for disability benefits under Title II of the Social Security Act, 42 U.S.C. § 423, and under the Supplemental Security Income ("SSI") program of Title XVI of the Social Security Act, 42 U.S.C. § 1382(a), claiming an inability to work since December 12, 1994, due to major depression. Certified Administrative Record ("A.R.") 55–64, 82. The plaintiff's applications were initially denied on March 14, 1995, and were denied following reconsideration on April 20, 1995. A.R. 65–78. The plaintiff then requested an administrative hearing, which was held before Administrative Law Judge ("ALJ") Lawrence D. Wheeler

### II

The plaintiff was born in Mexico on January 29, 1950; she is currently 50 years old. A.R. 55, 60. She has no formal education, but has previously worked as a seamstress. A.R. 50, 86.

## DISCUSSION

### III

Pursuant to 42 U.S.C. § 405(g), the Court has the authority to review the Commissioner's decision denying plaintiff disability benefits to determine if his findings are supported by substantial evidence and whether the Commissioner used the proper legal standards in reaching his decision. *Meanel v. Apfel,* 172 F.3d 1111, 1113 (9th Cir.1999); *Reddick v. Chater,* 157 F.3d 715, 720 (9th Cir.1998). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Morgan v. Commissioner of the Soc. Sec. Admin.,* 169 F.3d 595, 599 (9th Cir.1999); *Meanel,* 172 F.3d at 1113. It is "more than a mere scintilla but less than a preponderance." *Tidwell v. Apfel,* 161 F.3d 599, 601 (9th Cir.1998); *Reddick,* 157 F.3d at 720.

"In determining whether the Commissioner's findings are supported by substantial evidence, [this Court] must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick,* 157 F.3d at 720; *Sandgathe v. Chater,* 108 F.3d 978, 980 (9th Cir.1997) (per curiam). "If the evidence can reasonably support either affirming or reversing the [Commissioner's] conclusion, the court may not sub-

stitute its judgment for that of the [Commissioner]." *Reddick*, 157 F.3d at 720–21; *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir.1998).

■ The claimant is "disabled" for the purpose of receiving benefits under the Social Security Act if she is unable to engage in any substantial gainful activity due to an impairment which has lasted, or is expected to last, for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). "The claimant bears the burden of establishing a prima facie case of disability." *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir.1995), *cert. denied*, 517 U.S. 1122, 116 S.Ct. 1356, 134 L.Ed.2d 524 (1996); *Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir.1996).

■ Regulations promulgated by the Commissioner establish a five-step sequential evaluation process to be followed by the ALJ in a disability case. 20 C.F.R. §§ 404.1520, 416.920. In the **First Step,** the ALJ must determine whether the claimant is currently engaged in substantial gainful activity; if so, a finding of nondisability is made and the claim is denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not currently engaged in substantial gainful activity, in the **Second Step,** the ALJ must determine whether the claimant has a severe impairment or combination of impairments significantly limiting her from performing basic work activities; if not, a finding of nondisability is made and the claim is denied. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, in the **Third Step,** the ALJ must compare the impairment to those impairments in the Listing of Impairments ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1; if the impairment meets or equals an impairment in the Listing, disability is conclusively presumed and benefits are awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d). When the claimant's impairment does not meet or equal an impairment in the Listing, in the **Fourth Step,** the ALJ must determine

whether the claimant has sufficient "residual functional capacity" despite the impairment or various limitations to perform her past relevant work; if so, a finding of nondisability is made and the claim is denied. 20 C.F.R. §§ 404.1520(e), 416.920(e). The claimant has the burden of proving she is unable to perform past relevant work. *Reddick*, 157 F.3d at 721; *Smolen*, 80 F.3d at 1289. When the claimant shows an inability to perform past relevant work, a *prima facie* case of disability is established and, in **Step Five,** the burden shifts to the Commissioner to show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f).

Where there is evidence of a mental impairment that allegedly prevents the claimant from working, the Commissioner has supplemented the five-step sequential evaluation process with additional regulations. *Maier v. Commissioner of the Soc. Sec. Admin.*, 154 F.3d 913, 914 (9th Cir. 1998) (per curiam). Evaluation of an alleged mental impairment is a multi-step process. First, the Commissioner must determine the presence or absence of certain medical findings relevant to the claimant's ability to work (Part A). 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2). Second, when the claimant establishes these medical findings, the degree of functional loss resulting from the impairment must be rated by considering four areas of function: (a) activities of daily living; (b) social functioning; (c) concentration, persistence, or pace; and (d) deterioration or decompensation in work or work-like settings (Part B). 20 C.F.R. §§ 404.1520a(b)(3), 416.920a(b)(3). Third, after rating the degree of loss, the Commissioner must determine whether the claimant has a severe mental impairment. 20 C.F.R. §§ 404.1520a(c), 416.920a(c). Fourth, when a mental impairment is found to be severe, the ALJ must determine if it meets

or equals a Listing. 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2). Finally, if a Listing is not met, the Commissioner must then perform a residual functional capacity assessment employing the evaluation of the limitations considered in Part B. 20 C.F.R. §§ 404.1520a(c)(3–4), 416.920a(c)(3–4).

Here, the ALJ first determined that the plaintiff has not engaged in any substantial gainful activity since December 12, 1994. (Step One). The ALJ then determined that the plaintiff is not disabled because she "does not have any impairment or combination of impairments which significantly limit her ability to perform basic work-related activities." (Step Two). A.R. 16. As part of the Step Two analysis, the ALJ completed a Psychiatric Review Technique Form ("PRTF"), finding depression and evaluating the plaintiff's mental impairment under the Part A criteria for affective disorders (Listing 12.04). A.R. 17–19. The ALJ next evaluated the plaintiff under the Part B criteria, finding she has "slight" restriction in the activities of daily living, "slight" difficulty maintaining social functioning, "seldom" experiences deficiencies of concentration, persistence or pace, and "never" experiences episodes of deterioration or decompensation in work or work-like settings. A.R. 18–19. Based on this evaluation, the ALJ determined that the plaintiff does not have a severe mental impairment. A.R. 16.

## IV

The Step Two inquiry is "a de minimis screening device to dispose of groundless claims." *Smolen*, 80 F.3d at 1290. The Supreme Court has recognized that including a severity requirement at Step Two of the sequential evaluation process "increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if

their age, education, and experience were taken into account." *Bowen v. Yuckert,* 482 U.S. 137, 153, 107 S.Ct. 2287, 2297, 96 L.Ed.2d 119 (1987). However, an overly stringent application of the severity requirement violates the Social Security Act by denying benefits to claimants who do meet the statutory definition of disabled. *Corrao v. Shalala,* 20 F.3d 943, 949 (9th Cir.1994).

A severe impairment or combination of impairments within the meaning of Step Two exists when there is more than a minimal effect on an individual's ability to do basic work activities. *Smolen,* 80 F.3d at 1290; *see also* 20 C.F.R. §§ 404.1521(a), 416.921(a) ("An impairment or combination of impairments is not severe if it does not significantly limit [a person's] physical or mental ability to do basic work activities."). Basic work activities are "the abilities and aptitudes necessary to do most jobs," including physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling, as well as the capacity for seeing, hearing and speaking, understanding, carrying out, and remembering simple instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations, and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b), 416.921(b).

The plaintiff contends the ALJ's determination that she does not have a severe mental impairment is not supported by substantial evidence, and argues that the medical evidence shows she suffers from a severe mental impairment, i.e. depression. The Commissioner concedes the ALJ's determination is erroneous, Motion to Remand at 5:5–9, and argues that this matter should be remanded for a new Step Two determination, with the taking of new medical evidence.[1] Motion to Remand at 7:8–13.

---

1. The plaintiff does not object to a new consultative examination, but requests it be performed by her treating physician. Response at 2:19–3:7.

Here, the evidence clearly demonstrates that the plaintiff suffers from depression, a severe mental impairment. Between October 12, 1989, and March 27, 1995, plaintiff was diagnosed with major depression with psychotic features, generalized anxiety and seizures. A.R. 127–58, 180, 196–97, 203, 214. She was treated with psychotherapy and medication, including Elavil,[2] Klonopin,[3] Librium,[4] Mellaril,[5] Norpramin,[6] Pamelor,[7] and Paxil.[8] A.R. 137, 146, 155, 158, 195–96, 203. Additionally, it was found that the plaintiff has engaged in self-destructive behavior, such as self-mutilation, and has experienced auditory hallucinations, impaired concentration, memory, judgment and insight, depressed mood, sleep dysfunction, and weight and appetite changes. A.R. 196, 218. Moreover, on October 12, 1989, and April 13, 1992, plaintiff's Global Assessment of Functioning ("GAF") was 30.[9] A.R. 197, 214. Further, in late 1994 or early 1995, the plaintiff was hospitalized at Olive View Medical Center following a suicide attempt. A.R. 139, 186.

The only other medical evidence in the record is a PRTF and a Mental Residual Functional Capacity Assessment completed on March 7, 1995, by Evelyn Aquino–Caro, M.D., a nontreating and nonexamining physician. A.R. 113–25. Dr. Aquino–Caro found that the plaintiff has a depressive syndrome characterized by psychomotor agitation or retardation, which causes a "slight" restriction in the activities of daily living and "slight" difficulty maintaining social functioning, and plaintiff "seldom" experiences deficiencies of concentration, persistence or pace resulting; however, Dr. Aquino–Caro did not determine whether the plaintiff ever experiences episodes of deterioration or decompensation in work or work-like settings. A.R. 117–25. Dr. Aquino–Caro also found the plaintiff's ability to understand, remember and carry out detailed instructions was moderately limited, but she was otherwise not significantly limited by her mental impairment. A.R. 113–16.

The ALJ relied upon Dr. Aquino–Caro's findings in determining that the plaintiff does not have a severe mental impairment. A.R. 14. However, these findings do not constitute substantial evidence to support the ALJ's determination. *See Morgan,* 169 F.3d at 602 ("The opinion of a nonexamining medical advisor cannot by itself constitute substantial evidence that justifies the rejection of the opinion of an examining or treating physician.").

2. "Elavil is prescribed for the relief of symptoms of mental depression." *The PDR Family Guide to Prescription Drugs,* 204 (5th ed.1997).

3. "Klonopin is used alone or along with other medications to treat convulsive disorders such as epilepsy." *The PDR Family Guide to Prescription Drugs* at 294.

4. "Librium is used in the treatment of anxiety disorders." *The PDR Family Guide to Prescription Drugs* at 310.

5. "Mellaril is used to reduce the symptoms of psychotic disorders such as schizophrenia, and to treat depression and anxiety in adults." *The PDR Family Guide to Prescription Drugs* at 344.

6. "Norpramin is used in the treatment of depression." *The PDR Family Guide to Prescription Drugs* at 403.

7. "Pamelor is prescribed for the relief of symptoms of depression." *The PDR Family Guide to Prescription Drugs* at 421.

8. "Paxil is prescribed for serious, continuing depression that interferes with [the] ability to function. Symptoms of this type of depression often include changes in appetite and sleep patterns, a persistent low mood, loss of interest in people and activities, decreased sex drive, feelings of guilt or worthlessness, suicidal thoughts, difficulty concentrating, and slowed thinking." *The PDR Family Guide to Prescription Drugs* at 428.

9. A GAF of 30 indicates "[b]ehavior is considerably influenced by delusions or hallucinations or serious impairment in communication or judgment (e.g. sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) or inability to function in almost all areas (e.g. stays in bed all day; no job, home, or friends)." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders,* 32 (4th ed.1994).

The contradictory medical opinions of plaintiff's treating physicians are entitled to special weight, *Reddick*, 157 F.3d at 725; *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir.1988), since these physicians are "employed to cure[,] and [they] ha[ve] a greater opportunity to know and observe the [plaintiff] as an individual." *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987); *Morgan*, 169 F.3d at 600. When rejecting the uncontroverted opinion of a treating physician, the Commissioner must provide clear and convincing reasons. *Reddick*, 157 F.3d at 725; *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.1995).

■ Here, the ALJ rejected the opinions of the plaintiff's treating physicians on the sole ground that "there is no objective evidence offered in support of [their] assessment." A.R. 14. There is no basis for the ALJ's rejection of the opinions of plaintiff's treating physicians on this ground since:

> [c]ourts have recognized that a psychiatric impairment is not as readily amenable to substantiation by objective laboratory testing as is a medical impairment and that consequently, the diagnostic techniques employed in the field of psychiatry may be somewhat less tangible than those in the field of medicine. In general, mental disorders cannot be ascertained and verified as are most physical illnesses, for the mind cannot be probed by mechanical devices in order to obtain objective clinical manifestations of mental illness.... [W]hen mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnoses and observations of professionals trained in the field of psychopathology. The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation, unless there are other reasons to question the diagnostic technique.

*Christensen v. Bowen*, 633 F.Supp. 1214, 1220–21 (N.D.Cal.1986) (quotation marks and citation omitted); *Rodriguez v. Bowen*, 876 F.2d 759, 762 (9th Cir.1989); *See also Sprague*, 812 F.2d at 1232 (When treating physician diagnosed claimant with depression, set forth clinical observations supporting the diagnosis, and prescribed psychotherapeutic drugs, ALJ erred in finding claimant had not set forth sufficient evidence to substantiate mental impairment); *Bilby v. Schweiker*, 762 F.2d 716, 719 (9th Cir.1985) (ALJ's finding that claimant has no medically determinable psychiatric condition is not supported by substantial evidence when uncontroverted medical opinion of treating psychiatrist, who set forth diagnoses, clinical evidence and symptoms of mental impairment, demonstrates that claimant has a disabling psychiatric impairment, and argument that the treating psychiatrist's opinion was properly disregarded "because it fails to set out 'supporting objective findings'" is without merit). Thus, it was error for the ALJ to reject the plaintiff's medical evidence as unsupported by objective medical evidence. *Bilby*, 762 F.2d at 719. Rather, the Court finds that the available medical records show that plaintiff suffers from the severe impairment of major depression, which imposes more than a de minimis restrictions on plaintiff's ability to perform basic work activities.

## IV

The Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g). *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir.1987); *Sprague*, 812 F.2d at 1232.

■ "If additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded." *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir.1990) (quoting *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir.1981)). Remand is appropriate if the record is incomplete and additional evidence could complete the record. *Marcia*, 900 F.2d at 175; *Gamer v. Secretary of*

*Health & Human Services,* 815 F.2d 1275, 1280 (9th Cir.1987).

Here, the ALJ erred at Step Two of the sequential evaluation process, and remand is appropriate to allow the Commissioner to continue the sequential analysis starting at Step Three.[10] There is no reason for the Court to direct the manner in which the Commissioner analyzes Steps Three, Four and Five (if reached), and the Court declines to do so. *Delgado v. Heckler,* 722 F.2d 570, 574 (9th Cir.1983). Instead, the Commissioner should follow his normal rules and regulations in determining whether the testimony of a medical expert and/or a vocational expert is necessary for a proper resolution of the plaintiff's claim.

## ORDER

IT IS ORDERED that: (1) plaintiff's motion for summary judgment is granted and defendant's motion for limited remand is denied; and (2) the Commissioner's decision is reversed, and this matter is remanded to the Social Security Administration for further proceedings consistent with this Memorandum Decision, pursuant to sentence four of 42 U.S.C. § 405(g).

---

**10.** Having concluded that a remand is appropriate because the ALJ erred in ending the sequential evaluation at Step Two, this Court need not consider the issue of plaintiff's credibility.