Patricia BILBY, Plaintiff-Appellant,

v.

Richard S. SCHWEIKER, Secretary of Health and Human Services, Defendant-Appellee.

No. 83–5641.

United States Court of Appeals, Ninth Circuit.

Submitted July 24, 1984 \*.

Decided Jan. 15, 1985.

Amended April 16, 1985.

F. James Bear, National City, Cal., for plaintiff-appellant.

Kathryn A. Snyder, San Diego, Cal., Dennis J. Mulshine, U.S. Dept. of Health & Human Services, San Francisco, Cal., for defendant-appellee.

Before BARNES, HUG, and ALARCON, Circuit Judges.

PER CURIAM:

Patricia Bilby filed an application for social security disability insurance benefits on April 7, 1980. She also filed an application for Supplemental Security Income (SSI) benefits on June 13, 1980. She alleged that she had been disabled since 1972,[1] due to a combination of factors including psychiatric problems, hearing loss, hypoglycemia, and orthopedic problems. She had been in continuing psychotherapy with Dr. Essert since October 1976, and had been hospitalized for psychiatric reasons three times during 1977 and 1978, including at least one suicide attempt. Dr. Essert diagnosed acute and chronic schizophrenia, borderline personality disorder, and psychoneurosis. Two other psychiatrists, one of whom was appointed by the ALJ as a consultant in July 1980, gave similar diagnoses. All three doctors stated that Bilby had been totally disabled since at least September 1976.[2]

The ALJ found Bilby disabled as of July 1980 and granted SSI benefits, but denied disability insurance benefits on the ground that Bilby had not shown she was disabled prior to the expiration of her insured status in September 1977. The Appeals Council affirmed in July 1981 and November 1981. Bilby sought review in the district court, which granted the Secretary's motion for summary judgment. The district court denied Bilby's motion for reconsideration in February 1983. Bilby filed a timely notice of appeal.

I

*Disability Insurance Benefits*

■ In order to qualify for social security disability benefits, a claimant must establish that a medically determinable physical or mental impairment prevents him from engaging in substantial gainful activity. *Perry v. Heckler,* 722 F.2d 461, 464 (9th Cir.1983); 42 U.S.C. § 423(d)(1)(A) (1982). The impairment must result from abnormalities that are demonstrable by medically acceptable clinical or laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3) and 1382c(a)(3)(C) (1982). The weight accorded to a doctor's opinion on disability generally depends on the extent to which it is supported by clinical findings. *Coats v. Heckler,* 733 F.2d 1338, 1340 n. 4 (9th Cir.1984); 20 C.F.R. § 404.1527.

While the burden is on the claimant to establish disability, once the claimant demonstrates inability to return to past work because of medical disability, the burden shifts to the Secretary to show the claimant can perform specific work. *Perry v. Heckler,* 722 F.2d at 464; *Bonilla v. Secretary of HEW,* 671 F.2d 1245, 1246 (9th Cir.1982).

■ Although a medical expert's opinion regarding disability is not binding on the ALJ, the ALJ must provide clear and convincing reasons for rejecting an uncontroverted medical opinion. *Coats v. Heckler,* 733 F.2d at 1340; *Montijo v. Secretary of HHS,* 729 F.2d 599, 601 (9th Cir.1984); *Rhodes v. Schweiker,* 660 F.2d 722, 723 (9th Cir.1981).

■ This court reviews the Secretary's decision to determine whether it is supported by substantial evidence in the record as a whole, and based on proper legal standards. *Kail v. Heckler,* 722 F.2d 1496, 1497 (9th Cir.1984); 42 U.S.C. § 405(g) (1982).

1. Bilby last worked in 1972, when she apparently was fired for several reasons, including a "nervous breakdown" (AR 174).

2. Dr. Henderson, the ALJ's consultant, filed two reports. The government argues that the second report, which states Henderson's opinion as to the onset date of Bilby's disability, is not properly before this court because it was not before the agency. However, this evidence was submitted to and considered by the Appeals Council. Because the Secretary has therefore had an opportunity to consider this evidence, this court may also consider it, in the context of the record as a whole. *See Delgado v. Heckler,* 722 F.2d 570, 573 (9th Cir.1983). Even without this report, however, Bilby has made out a prima facie case of disability. Thus, a remand for the taking of further evidence is not necessary.

Apparently the ALJ based his rejection of Bilby's disability claim on evidence relevant primarily to her physical impairment. This evidence, however, does not justify rejecting the uncontroverted psychiatric evidence. *See Montijo*, 729 F.2d at 602. In evaluating the evidence of Bilby's disability as a whole, the ALJ summarized Bilby's claim as one of inability to work "because of hearing difficulty, hypoglycemia, susceptibility to infection, inability to cope with job pressure and to give her children proper care, her back condition, and her automobile accidents." This analysis reflects woefully inadequate attention to the well-substantiated, unanimous, and uncontradicted diagnoses of the psychiatric experts that Bilby was totally disabled by her severe psychiatric problems.[3] Both the treating and consulting psychiatrists concluded that Bilby had been disabled since at least September 1976. This medical evidence was uncontroverted.

The ALJ, however, rejected these diagnoses. He speculated that the doctors' opinions might reflect personal judgments regarding disability that might be inconsistent with the standards of the statute, but failed to substantiate this speculation or to specify in what way the doctors' conclusions were incorrect. The ALJ also indicated that the doctors' opinions were rendered retrospectively at the request of Bilby's attorney. This was of course inevitable where the time period in question was in the past. While it is true that Dr. Bayardo and Dr. Henderson based their conclusions regarding the date of onset of disability on a review of the records, Dr. Essert's conclusion was based on his personal treatment of Bilby beginning in 1976 and continuing until the present.

The ALJ's conclusion that "there has been no showing of any medically determinable restrictive psychiatric condition which precluded the claimant from engaging in all substantial gainful activity for [a] continuous period of [at] least 12 months prior to the date she was last insured" is contradicted by the reports of the medical experts, particularly those of Dr. Essert, the psychiatrist who has treated Bilby since 1976. In a report dated October 1976, for example, Dr. Essert stated that Bilby was suffering from severe depression, anxiety, nervousness, and potentially self-destructive despair, and could not continue to function "even marginally." In a later report, Dr. Essert stated that he had concluded that Bilby was "totally unable to function in any normal interpersonal, social or occupational way." The government argues that Dr. Essert's report regarding Bilby's disability prior to 1980 is insufficient because it fails to set out "supporting objective findings." However, this court has stated that "[d]isability may be proved by medically-acceptable clinical diagnoses, as well as by objective laboratory findings." *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir.1975). Moreover, Dr. Essert's report does in fact describe the clinical evidence and symptoms of Bilby's mental illness.[4]

The ALJ failed to articulate any clear and convincing reasons for disregarding the uncontroverted medical opinions of both the treating and consulting psychiatrists, and his finding of no disability therefore cannot stand.

It is within this court's discretion to hold Bilby entitled to benefits or to remand for additional evidence. *Kail v. Heckler*, 722 F.2d at 1497. A remand is appropriate where additional administrative proceedings could remedy defects. *Id.* Where a rehearing would simply delay receipt of benefits, however, reversal is appropriate. *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir.1981). In *Kail*, the court

---

**3.** The ALJ also ignored relevant lay witness testimony regarding Bilby's substantial psychological deterioration. Diane Duntley, a child protective social worker, testified that Bilby had been unable to care for herself and her children, as well as unable to work, since the fall of 1976. Mary Hewitt, a long-time friend of Bilby's, testified that in 1976 Bilby became a different person, changed mentally, and couldn't relate to other people: "you talk to her and it was like you weren't ... there."

**4.** The government also contends that Dr. Essert's 1980 report is inconsistent with his 1976 report. An examination of the two documents refutes this allegation.

remanded for evidence to corroborate the treating doctor's finding of disability because the other doctors had not stated opinions on the question of disability. In Bilby's case, all three examining psychiatrists, including the Secretary's consultant, have stated their unanimous opinion that Bilby was totally disabled prior to lapse of her insured status. Under these circumstances, it is appropriate to remand for entry of judgment ordering the payment of benefits, since the uncontroverted medical testimony establishes total disability. *See Johnson v. Harris*, 625 F.2d 311 (9th Cir. 1980) (remand for entry of judgment in favor of claimant where claimant made prima facie case and Secretary failed to rebut it or show specific jobs which claimant could perform).

## II

### SSI Benefits

Bilby contends that her SSI benefits should have been calculated retroactive to April 1980 rather than to July 1980 because the April filing of her disability insurance claim should have been construed as an SSI claim. The government argues that the ALJ's finding that disability began only in July makes this issue irrelevant. Because we conclude that the ALJ erred and that Bilby was disabled prior to the expiration of her insured status, we must address this issue.

20 C.F.R. § 416.336 (1979), in effect at the time of application, provided that oral inquiries about SSI benefits "may be used to establish the filing date of an application" if, *inter alia*, the claimant filed a proper application "within 60 days after the date of the notice the Social Security Administration will send telling of the need to file an application." Section 416.336a said that, subject to certain conditions, a title II (disability) application was to be treated as an oral inquiry about SSI benefits. The latter regulation required that the Social Security Administration ("Administration") explain to title II applicants the requirements for receiving SSI benefits and that it

give such persons the opportunity to file for SSI if (1) the person is within two months of 65, or older, or looks as though he or she might qualify as a blind or disabled person, and (2) it is not clear that title II benefits would make him or her ineligible for SSI or state supplementary benefits administered by the Administration. Where the claimant does not file for SSI, a notice of the need to file is to be sent by the Administration to the claimant, who may preserve the title II filing date as the SSI filing date by formally filing for SSI benefits within 60 days of the date of the notice.

In this case it is unclear (1) whether section 416.336a obligated the Administration to inform Bilby of the SSI eligibility requirements, (2) if so, whether it did, and (3) whether her June 13, 1980 filing fell within the 60-day limit. On remand, the Secretary should resolve these factual issues to determine the date from which SSI benefits are to be calculated.

The judgment of the district court is reversed. The case is remanded for entry of judgment in favor of Bilby and calculation of benefits.[5]

REVERSED and REMANDED.

---

**5.** Bilby's request for attorney's fees under the Equal Access to Justice Act is premature. Any

such request must first be presented to the district court.