**Dale B. LOGAN, Plaintiff,**

v.

**Otis R. BOWEN, M.D., Secretary of Health and Human Services, Defendant.**

**No. CIV 88–602 PHX CLH.**

United States District Court, D. Arizona.

April 27, 1989.

Joel F. Friedman, Phoenix, Ariz., for plaintiff.

Michael R. Arkfeld, Asst. U.S. Atty., Phoenix, Ariz., for defendant.

## MEMORANDUM OPINION AND ORDER

HARDY, District Judge.

Plaintiff Dale Logan seeks judicial review, pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), of the final decision of the defendant Secretary denying him disability insurance benefits. Logan argues that he has been disabled since January 1, 1981, because of various psychological and physical ailments. His eligibility for disability benefits ended March 1, 1981, but he failed to apply for benefits until September 1984.

Logan has moved for summary judgment, arguing that the decision of the Administrative Law Judge ("ALJ") and the Appeals Council, denying his application for benefits, should be reversed for lack of substantial evidence or for application of improper legal standards. The Secretary opposes his motion and has filed a cross-motion for summary judgment. The case must be remanded for further findings by the ALJ.

## BACKGROUND

Logan is a 55 year old male who is 5 feet 9 inches tall and weighed about 325 pounds at the time of the ALJ's hearings. He has completed 12 years of formal education. Logan has work experience as an owner/operator of an automobile wrecking business, a salesman, an owner/operator of a heavy equipment business, and an electrical maintenance man. He has an Arizona driver's license.

Logan is fully insured under the Social Security Act, but met the special earnings requirement for eligibility for disability benefits only through March 31, 1981. He claims that he has been disabled since January 1, 1981, when he sold his auto wrecking business because of his inability to cope with running the business. He alleges that he could no longer operate the business because of memory problems, confusion, pain, and fatigue. However, his medical record from that time period is very scanty, and he has had to rely largely on the testimony of psychologists and psychiatrists who examined him in 1986 and 1987 and surmised that he has been disabled since early 1981.

Logan's medical history before 1981 indicates that he was suffering from alcoholism and problems associated therewith (cirrhosis, jaundice, etc.). However, Logan claims that he ceased his alcohol abuse in 1978, and the problems from that time appear to be only indirectly related to those that he now claims are disabling him.

Logan sold his business in January 1981; his disability eligibility ended in March. He was not seen by a doctor until July 7, when he was examined by Dr. Kenneth Leung. Logan exhibited high blood pressure (160/100), heart problems (left verticular hypertropy, tachycardia, and occasional gallops), and obesity. Dr. Leung prescribed Hygroton and Sinequan. Logan points out that Sinequan is typically given to patients with depression or anxiety problems, including those attributed to alcoholism or organic disease. However, Dr. Leung, in an October 22, 1984 letter to the disability examiners, refused to suggest that Logan's condition was disabling, stating: "Of course I feel that this is not adequate information to have a fair evaluation of the patient."

The only other medical evidence from 1981 is from Dr. Payne, who treated Logan in July and October 1981. In a May 1985 letter, Dr. Payne reported he had found symptoms of congestive heart failure (including edema, shortness of breath, and inspiratory rales), and had prescribed a regimen including diuretics and weight loss. Dr. Payne made no suggestions as to the extent of Logan's disability.

The next medical evidence is from September 1984, when Logan was examined by Dr. Block, an internist. Logan then weighed 311 pounds, with a recent 30

pound gain, and complained of impotency since a stroke in 1976, enlarged breasts, headaches, and weakness that made him unable to work. Block suggested pituitary and thyroid misfunction, and noted that a CAT scan showed a low density lesion in the area of the pituitary. Later evidence suggests that this tumor is inoperable.

Dr. Block referred Logan to Dr. White, a neurologist, who examined Logan on October 11, 1984. Logan had difficulty with history and train of thought, high blood pressure, normal motor strength, and slightly decreased pinprick sensation of the left upper extremity. He complained to Dr. White of several problems since his 1976 stroke, including recent weight gain of 80 pounds and general weakness. White's report suggests that Logan sold his junk yard business when he had trouble figuring the taxes on it. Dr. White reviewed that September CAT scan, and diagnosed possible pituitary and thyroid problems, hypogonadism, possible depression (which Logan attributed to situational problems), obesity, and hypertension.

As noted above, Logan applied for disability benefits in September 1984, stating that the disabling condition was a tumor in his head. His claim was denied.

Logan obtained an attorney, who referred him to Dr. Menack, a psychiatrist. Dr. Menack examined Logan on September 10 and 18, 1985, and a few times thereafter. Logan told Menack that he had been severely depressed and anxious for the last six to twelve months, and complained of large recent weight gain, severe headaches and pain in his back, arms, and legs. Logan stated that his daughter had died at age 7 and his son had committed suicide at age 27 in 1981, and related those tragedies to his present condition. He had some problems with memory, but no problems with orientation, delusions, or overt psychotic symptoms. Dr. Menack diagnosed a severe major depressive disorder complicated by anxiety, a possible passive-aggressive personality disorder, chronic pain syndrome, extreme severity of psychosocial stressors, and poor adaptive functioning. He prescribed an antidepressant and rec-

ommended psychotherapy. Menack opined that Logan was severely or moderately severely impaired in all categories.

Logan reapplied for disability benefits, alleging a mental disorder. The ALJ remanded the case to a state agency for further evaluation. The claim was denied for lack of medically documented evidence of a severe impairment during the time Logan was insured.

Logan had his first hearing before the ALJ on September 17, 1986 (discussed below). He was then referred to two more doctors for examination. Dr. Lavit, a psychologist, examined Logan on October 14, 1986. Testing on the WAIS–R indicated that Logan was functioning in the low-average to average range of intelligence, with superior range of comprehension. Scores on other tests indicated severe depression, a personality profile typical of alcoholics, low self-esteem, anxiety and confusion. Logan reported a history of violent behavior, suicidal thoughts, and poor short-term memory. Dr. Lavit diagnosed extreme depression (ruling out schizophrenia), a passive-depressive personality disorder, and average intellectual ability with deficits in the visual/motor sphere possibly related to Logan's prior alcoholism and/or reported tumor. He assessed Logan as severely impaired in all but one area. However, Dr. Lavit's only comment as to the possibility of disability in 1981 is a statement that "the depressive disorder appears to be of a chronic long-term nature." He also noted that the impairments had lasted or were expected to last at least twelve months, but left unanswered a question about his opinion as to the earliest date the same level of severity existed.

On October 22, 1986, Logan was examined by Dr. Don, a psychiatrist. Logan reported to Dr. Don that he had sold his auto wrecking yard in 1981 because he felt no longer able to cope: he had difficulty concentrating, remembering, and dealing with pressure such as figuring out taxes. He also told Dr. Don that he was not working because of his pituitary tumor; that he had great difficulty dealing with stress and sometimes felt suicidal; that his

activities included daily caring for hygenic needs (although he was somewhat unkempt), exercising, and some housekeeping; and that he enjoyed seeing friends and family outside of his home. Psychometric testing indicated evidence of severe depression and organic deficits consistent with a tumor, and Dr. Don found that Logan's memory and concentration were impaired. He diagnosed organic affective disorder and a history of alcohol abuse. He assessed Logan as only mildly impaired in daily living activities and relating to others, but moderately to moderately severely impaired in all other areas. In answer to a question as to the earliest date the same level of severity existed, Dr. Don answered, "Probably at least two years ago."

A great deal of testimony was given at the hearings before the ALJ. Those testifying were Mr. Mitchell, a vocational expert; Logan himself; Regina Villegas, his girlfriend; Dr. Menack, a psychiatrist; and Dr. Bendheim, also a psychiatrist, who reviewed all medical evidence but did not personally examine Logan.

Mitchell's testimony was inconclusive. Logan gave testimony indicating that he was disabled by the combination of his depression and physical problems in 1981. He stated that his condition had deteriorated over a lengthy time period. The ALJ noted that Logan's memory was vague, at best.

Regina Villegas, who lived with Logan from about 1978 to 1986, testified twice before the ALJ. At the first hearing, she stated that Logan quit drinking in 1978 but was extremely weak thereafter; that he was depressed, forgetful, and weak around the time he sold his auto wrecking yard in January 1981; that he was almost a recluse for the next year and a half and almost never left the house; that he could not have maintained an independent life without her help; that she took care of housework, shopping, finances, etc.; that Logan was impotent (since at least 1980) and had insomnia and memory problems; and that the memory problems had been a constant and increasing problem since he sold his business.

At the second hearing, Villegas testified that she no longer lived with Logan; that in 1979 and 1980 Logan was functioning poorly, was very depressed, and could not care for himself with such things as grocery shopping; that Logan had problems taking care of his business because of his weakness and confusion; that his son was basically taking care of the office; that Logan was housebound and depressed after selling his business; that he had suicidal thoughts; that his only real social contacts from 1980–85 were with her family; that Logan had improved slightly physically from 1981 to 1986 but had lost ground mentally (although she gave conflicting evidence on this point); and that Logan had memory problems.

The ALJ gave adequate reasons for discrediting Logan's testimony, but did not explain why he was also disregarding Villegas' testimony, other than to state that she had admitted that Logan's problems had grown worse since 1981.

Dr. Bendheim, a psychiatrist, testified that he would find Logan presently disabled, and that if the testimony of Logan and Villegas were accepted, he would find that Logan was disabled in 1981.

Dr. Menack, another psychiatrist, testified at the first hearing (during examination by the ALJ) that it was "too speculative" to state what level of severity Logan's problems were at in 1980. He testified as to several problems that may well have disabled Logan at that time. At the later hearings, he altered his opinion somewhat and stated that his opinion was that Logan's impairments had had the same level of severity in 1981. Dr. Menack stated that he had been harassed or intimidated by the ALJ's questions during the earlier hearing; however, he admitted that he has practiced for 18 years and had testified about a dozen times. The ALJ found several inconsistencies in Menack's testimony and concluded that his finding of disability in 1981 was not supported by credible evidence.

On August 28, 1987, the ALJ issued a decision that Logan was not disabled prior to the last date insured, March 31, 1981.

The Appeals Council summarily denied review in February 1988. Logan appealed the decision to this court, arguing that the decision was not supported by substantial evidence and that the ALJ applied incorrect legal standards. Logan contends that the ALJ erred in finding the testimony favoring Logan not credible, and in refusing to accept the retrospective medical testimony that Logan was probably disabled in early 1981.

DISCUSSION

This court cannot set aside the Secretary's denial of benefits unless the Secretary's findings are based upon legal error or are not supported by substantial evidence in the record as a whole. *E.g., Green v. Heckler,* 803 F.2d 528, 529 (9th Cir.1986). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). The plaintiff has the burden of showing that a physical or mental impairment prevents him from engaging in his previous work. *Varney v. Secretary of HHS,* 846 F.2d 581, 583 (9th Cir. 1988). The issue of credibility is decided by the Secretary, and great weight is given to the ALJ's credibility assessment. *Brawner v. Secretary of HHS,* 839 F.2d 432, 433 (9th Cir.1988); *Norris v. Heckler,* 760 F.2d 1154, 1157 (9th Cir.1985). "Furthermore, a claimant's self-serving statements may be disregarded to the extent they are unsupported by objective findings." *Nyman v. Heckler,* 779 F.2d 528, 531 (9th Cir.1985). *But see Hudson v. Bowen,* 849 F.2d 433, 435 (9th Cir.1988) (claimant's testimony must not be entirely discounted simply because there is a lack of objective findings.)

The objective medical reports as to Logan's disability in 1981 are inconclusive. Dr. Menack is the only doctor who has unequivocally stated that Logan was disabled in 1981. However, his testimony is undermined by his earlier statement that that was "too speculative" to determine and by other inconsistencies noted by the government and the ALJ. Moreover, to the extent that Menack and Dr. Bendheim thought Logan might have been disabled in 1981, they were relying largely on Logan's and Regina's statements rather than objective medical evidence. *See Bilby v. Schweiker,* 762 F.2d 716, 718 (9th Cir.1985) ("The weight accorded to a doctor's opinion on disability generally depends on the extent to which it is supported by clinical findings."); *Brawner,* 839 F.2d at 434 (where physicians' opinions were based on the claimant's own complaints rather than on clinical or other reliable evidence, and the claimant's conduct undermined his credibility, it was not error to reject those opinions). *But see Hartman v. Bowen,* 636 F.Supp. 129, 132 (N.D.Cal.1986) (arguing that it is inappropriate to require objective clinical evidence of a mental illness, and that the diagnoses and observations of professional psychiatrists and psychologists should be sufficient to demonstrate the impairment).

■ The testimony of the other doctors as to Logan's disability in 1981 is also inconclusive or is nonexistent. Dr. Bendheim, a non-examining physician, stated that Logan was probably disabled in 1981 if his and Regina's testimony was reliable, but that an assessment of disability in 1981 would lack medical certainty. Dr. Lavit, who examined Logan in 1986, noted that the problem was a long-term nature but left unanswered the question as to how long the problem had existed at that level of severity. Dr. Don, who also examined Logan in 1986, stated only that the problem had been at that level of severity for "at least two years," which leaves open the period before 1984. Dr. White, who examined him in 1984, found only "possible depression" and noted that Logan attributed it to his situation. Dr. Block (from 1984) and Dr. Payne (from 1981) did not directly address the question of disability. Dr. Leung prescribed an antidepressant in 1981, but stated in a 1984 letter that there was inadequate information for a fair evaluation of Logan. Four state agency physicians also concluded there was insufficient evidence of disability during the relevant time period. Thus, there is substantial evidence to support the ALJ's conclusion that

the medical evidence does not support a finding of disability before March 31, 1981.

However, the ALJ erred in failing to give specific reasons for disregarding Villegas' testimony. Ninth Circuit cases have indicated that, if substantial evidence of disability is given by family or other lay witnesses, the ALJ has a responsibility to give reasons for disregarding that testimony. In *Smith v. Bowen*, 849 F.2d 1222 (9th Cir.1988), the court stated:

> The Appeals Council briefly summarized the evidence presented by Smith's mother, two long-time neighbors and his living partner of 12 years, but it gave no reason for disregarding it. In *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987), this court noted that "[d]escriptions by friends and family members in a position to observe a claimant's symptoms and daily activities have routinely been treated as competent evidence." Further, the court stated that "[d]isregard of this evidence violates the Secretary's regulation that he will consider observations by non-medical sources as to how an impairment affects a claimant's ability to work. 20 C.F.R. § 404.1513(e)(2)." *Id.* Under this standard, the testimony of those who lived with or saw Smith on a daily basis should have been weighed in the assessment of the frequency and disabling effects of his seizure episodes.

*Id.* at 1226; *see also Bilby v. Schweiker*, 762 F.2d 716, 719 n. 3 (9th Cir.1985) (criticizing ALJ for ignoring relevant lay witness testimony regarding the claimant's substantial psychological deterioration). *But see Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir.1984) (court stated that it was not reversible error when ALJ did not discuss lay testimony where that testimony conflicted with the available medical evidence, noting that "[a]lthough courts have upheld use of lay testimony in some instances, it is not the equivalent of 'medically acceptable ... diagnostic techniques' that are ordinarily relied upon to establish a disability").

Some courts in other circuits have expressly stated that an ALJ must, if he disregards the testimony of a lay witness, specifically state that the witness' testimony was not credible and give reasons to support that finding. *See Smith v. Heckler*, 735 F.2d 312, 317 (8th Cir.1984) ("We have frequently criticized the failure of the Secretary to consider subjective testimony of the family and others. We have held that a failure to make credibility determinations concerning such evidence requires a reversal and remand. If the ALJ is to reject such testimony, it must be specifically discussed and credibility determinations expressed"); *McGee v. Bowen*, 647 F.Supp. 1238, 1246 (N.D.Ill.1986) ("[T]o reject testimony—either the claimant's or that of another lay person such as a member of the claimant's family—the ALJ must specifically conclude that the testimony is not credible. He must also provide a 'minimal level of articulation' of his reasons for finding lack of credibility."); *see also Zblewski v. Schweiker*, 732 F.2d 75, 78–79 (7th Cir. 1984) (claimant and wife testified; case remanded because ALJ disregarded this evidence without explanation). *But see Allen v. Schweiker*, 642 F.2d 799, 801 (5th Cir. 1981) (specific evaluation of wife's corroborating testimony was not necessary in light of other findings).

Where proof of a disability depends substantially on subjective evidence, as it does in this case, it is important for the ALJ to make a credibility determination. *Basinger v. Heckler*, 725 F.2d 1166, 1170 (8th Cir.1984). Given the importance of Villegas' testimony—she does not have the memory problems Logan is subject to, and she is the only actual witness of his allegedly disabled state in 1981—this case must be remanded to allow the ALJ to reconsider her testimony and make a determination as to her credibility.

ORDER

IT IS ORDERED remanding this case to the ALJ for consideration of Villegas' testimony and, if he reaffirms his decision, a statement of reasons as to why her testimony was not considered credible.