Alta J. ROSENBOOM, Plaintiff,

v.

Donna E. SHALALA, Secretary of Health and Human Services, Defendant.

Cv. No. 92–1594–JU.

United States District Court,
D. Oregon.

June 30, 1993.

Peter E. Baer, Gresham, OR, for plaintiff.

Craig J. Casey, U.S. Atty., Portland, Or., for defendant.

## ORDER

JUBA, United States Magistrate Judge:

### INTRODUCTION

Plaintiff, Alta J. Rosenboom, brought this action pursuant to Section 205(g) of the Social Security Act ("the Act"), as amended (42 U.S.C. § 405(g)), to obtain judicial review of the final decision of the Secretary of Health & Human Services ("Secretary"), denying plaintiff's claim for disability insurance benefits.

On April 26, 1991, plaintiff filed an application with the Social Security Administration for disability insurance benefits. Transcript ("Tr.") 67–69. Plaintiff indicated that she became unable to work on January 15, 1982 due to narcolepsy, hypertension and hayfever. That application was denied initially (on August 9, 1991) and on reconsideration (on October 10, 1991). Tr. 81–82 & 96–97. On October 14, 1991, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 98.

A hearing was held on February 19, 1992, before ALJ Joel T. Elliott. Tr. 28–66. The ALJ issued his decision on May 21, 1992, in which he found that the plaintiff was not entitled to a period of disability or disability insurance benefits as she was able to perform her past relevant work. Tr. 12–20. Plaintiff then made a timely request for review of the ALJ's decision by the Appeals Council. Tr. 8. On November 13, 1992, the Appeals Council affirmed the ALJ's decision, and this became the final decision of the Secretary pursuant to 20 C.F.R. § 404.981 (1992). Tr. 4–5. Plaintiff timely filed her complaint in this court on December 15, 1992.

Both parties to this action have filed written consents to have this case decided by a United States Magistrate Judge with direct appeal to the United States Court of Appeals for the Ninth Circuit in accordance with Fed. R.Civ.P. 73(b) and (c) and 28 U.S.C. § 636(c) (1993).

### STANDARDS

Title II of the Act provides for payment of insurance benefits to persons who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1)(D) (1991). The burden of proof to establish an entitlement to disability benefits rests upon the claimant. *Rhinehart v. Finch,* 438 F.2d 920, 921 (9th Cir.1971). To meet this burden, the claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A) (1991). The Act also provides that an individual shall be determined to be disabled only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage

in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A) (1991).

The Secretary has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. § 404.1520 (1992); *Bowen v. Yuckert,* 482 U.S. 137, 140–42, 107 S.Ct. 2287, 2290–91, 96 L.Ed.2d 119 (1987). First, the Secretary determines whether the claimant is engaged in "substantial gainful activity." If the claimant is engaged in such activity, disability benefits are denied. Otherwise, the Secretary proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.-1520(c) (1992). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the Secretary proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(d) (1992). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the Secretary proceeds to the fourth step to determine whether the impairment precludes the claimant from performing work which the claimant performed in the past. If the claimant is able to perform work which he or she performed in the past, a finding of "not disabled" is made and disability benefits are denied. If the claimant is unable to perform work performed in the past, the Secretary proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his age, education, and work experience. The claimant is entitled to disability benefits only if he is not able to perform other work. 20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992). If the

claimant shows an inability to perform past relevant work, then the burden shifts to the Secretary to show what gainful work activities are within the claimant's capabilities. *Bonilla v. Secretary of Health, Education and Welfare,* 671 F.2d 1245, 1246 (9th Cir. 1982).

 This court must review this case to see if the decision of the Secretary is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable person might accept as adequate to support a conclusion. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). It is more than a scintilla but less than a preponderance. *Sorenson v. Weinberger,* 514 F.2d 1112, 1119, n. 10 (9th Cir.1975). Even if the Secretary's decision is supported by substantial evidence, it must be set aside if the proper legal standards were not applied in weighing the evidence and in making the decision. *Bilby v. Schweiker,* 762 F.2d 716, 718 (9th Cir.1985); *Gallant v. Heckler,* 753 F.2d 1450, 1452 (9th Cir.1984).

### DISCUSSION

A. *Background of Plaintiff's Work and Medical Condition*

Plaintiff was born on June 12, 1933 and at the time of the hearing was 58 years of age. She graduated from high school in Portland, Oregon and from 1951 to 1974 worked and attended school in the Portland area. Between 1954 and 1974, she worked as a printer on various offset printing presses and did general office work with several different employers. Tr. 216–18. In 1963, she started a business selling Avon products, which she continued through 1983. From 1974 through 1977, plaintiff attended art school.

Plaintiff, plaintiff's husband (Max Rosenboom), and plaintiff's sister (Ruth Cook) testified at the hearing and submitted affidavits to the ALJ. That testimony and those affidavits indicate that plaintiff has been easily fatigued, and has suffered from narcolepsy[1]

---

1. Under the Social Security Administration's own administrative guidelines, "narcolepsy" is described as:

a chronic neurological disorder characterized by recurrent periods of an irresistible urge to sleep accompanied by ... 1. [c]ataplexy—at-

since at least the 1960's. Plaintiff's narcolepsy has been accompanied by "automatic behavior"[2], "cataplexy"[3], hallucinations[4], and "sleep paralysis."[5] At the hearing, plaintiff testified that she first became aware of what her medical problem was in the late 1960's when a doctor from Bess Kaiser Hospital indicated that he thought she had narcolepsy and indicated to her that there was medication which would help. Following that revelation, plaintiff's regular treating doctor prescribed ritalin, which helps plaintiff stay awake, but does nothing for her other narcolepsy-related problems. Tr. 40, 206. Plaintiff's condition continued to worsen and by the early 1980's prevented plaintiff from working.

B. *Review of the Decision of the Administrative Law Judge*

■ The ALJ determined that plaintiff (1) met the special earnings requirements of the Act through September of 1982; (2) has not engaged in substantial gainful activity since that date; (3) has a severe impairment due to her hayfever, hypertension, and narcolepsy; and (4) has a residual functional capacity which allows her to perform her past relevant work as a printer and receptionist. Tr. 18–19.

Among other things, plaintiff contends that the Secretary erred by failing to consider the effects of plaintiff's cataplexy on her ability to work. I agree. The ALJ describes plaintiff's impairments as "severe" and acknowledges that her residual functional capacity is limited by the "effects of medically controlled narcolepsy." Plaintiff was diagnosed as suffering from cataplexy as early as 1970 and her narcolepsy-related symptoms have continued to increase with time and increased stress. In January of 1992, Dr. Richard Olsen indicated that the risk of falling and other problems related to plaintiff's fatigue "could be hazardous" if plaintiff were to work. Tr. 178.

The only "medical control" of plaintiff's narcolepsy which is evident in the record is the prescription of ritalin. There is nothing in the record which indicates that ritalin does anything for plaintiff's narcolepsy other than to help plaintiff stay awake, and even in that regard, ritalin does not appear to be completely effective. In addition, plaintiff continues to suffer from other narcolepsy-related problems including the "automatic behavior", "cataplexy", hallucinations, and "sleep paralysis" described above. The ALJ does not discuss the effects which these narcolepsy-related symptoms would have on plaintiff's ability to perform her past relevant work. There is substantial evidence that insofar as plaintiff's past relevant work consists of working with moving machinery (i.e. printer), such work would be precluded.

Having reviewed the record as a whole, I conclude that the ALJ erred in failing to

tacks of loss of muscle tone, sometimes with actual collapse, during which the individual always remains conscious; 2. [h]ypnagogic hallucinations—hallucinations which occur between sleep and wakening, [and] 3. sleep paralysis—a transient sensation of being unable to move while drifting into sleep or upon awakening. In addition, some persons have periods of automatic behavior and most have disturbed nocturnal sleep.
Social Security Administration, Transmittal No. 12, SSA Pub. 68–0424500, Sec. 24580.005 (Feb. 1988) (attached to Plaintiff's Reply as Appendix 1).

2. This "automatic behavior", as described by plaintiff, is essentially like sleepwalking. Without notice, she will sometimes go into a sleepwalk-like state. She may appear to be moving normally and be awake, but then she will run into a wall, a building, or other people. Plaintiff contends that this behavior has not been helped by medication.

3. According to plaintiff, she has experienced "cataplexy" since at least 1965, when she was employed by the telephone company. As she describes this problem, she spontaneously becomes numb and weak and collapses wherever she is. Tr. 39. Plaintiff was diagnosed as having this problem as early as February of 1971. Tr. 201. This condition has resulted in plaintiff walking into walls, buildings, and other people, falling on her printing press at work, and, on one occasion, nearly being hit by a moving bus.

4. *See* Tr. 38.

5. Plaintiff indicated that this "sleep paralysis" happens just before she goes to sleep or wakes up and consists of the inability to move at all. When this happens to her, she is terrified and senses an urgency to move, if only slightly. Tr. 38.

consider the effects which plaintiff's narcolepsy-related symptoms which are not medically controllable have on plaintiff's ability to perform her past relevant work. There is substantial evidence to indicate that plaintiff has met her burden of showing that she is incapable of performing such work. Thus, the burden is now properly on the Secretary to show that there is other work which plaintiff is capable of performing. No vocational expert was called at the hearing and the record is lacking in evidence which would allow a decision in this regard. Thus, this case will be remanded to the Secretary for development of the record and a decision in accordance with step five of the evaluation process appropriate in this type of case.

## CONCLUSION

For the reasons stated above, plaintiff's complaint for review of the decision of the Secretary of Health & Human Services (docket # 1) is GRANTED, and this case REMANDED to the Secretary for further findings not inconsistent with this decision.