36 F.3d 1103
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Beverly S. LEDGETT, Plaintiff-Appellant,
v.
Donna E. SHALALA**, Secretary of Health
and Human Services, Defendant-Appellee.
 No. 92-36913.
 United States Court of Appeals, Ninth Circuit.
 Submitted July 14, 1994.*
Decided Sept. 1, 1994.
 
 Before: TANG, FERGUSON, and WIGGINS, Circuit Judges.
 
 
 1
 MEMORANDUM***
 
 
 2
 Beverly Ledgett appeals the district court's judgment affirming the Secretary's decision to deny her applications for disability insurance and social security benefits.
 
 
 3
 Ledgett contends that the Secretary's decision that she is not disabled is not supported by substantial evidence or applicable law. We reverse and remand for award of benefits and attorney's fees.
 
 I.
 
 4
 Beverly Ledgett was born on June 4, 1951. She is the mother of four children and is a high school graduate who has taken secretarial courses at a community college. She has worked as a measuring clerk, hostess/waitress, live-in-home health aide, United States census bureau worker, nurse's aide, microfilmer and typist, newspaper clerk, and claims clerk. Her work history demonstrates that she is not an intentional malingerer.
 
 
 5
 On September 5, 1985, Ledgett suffered multiple fractures as a passenger in a motor vehicle accident. Her injuries included a comminuted fracture of the right frontal and left temporal skull, multiple facial fractures (including a left tripod fracture, fracture of the right inferior orbital rim and wall of the right maxillary sinus, fractures of the medial wall of both orbits, and a fracture of the left zygoma), a comminuted mid-shaft left humeral fracture, and a comminuted mid-shaft right femoral fracture.
 
 
 6
 She alleged disability based on combined mental and physical impairments arising from the accident and beginning the date of the accident.
 
 
 7
 Ledgett of course was hospitalized during her surgery and recovery periods and underwent a number of surgeries and medical examinations. From September 1985 through November 1990, she was examined and evaluated by several doctors, including Martha MacRitchie, M.D.; neuropsychologist Robert Kurlychek, Ph.D.; orthopaedic surgeon Stanley Filarski, Jr., M.D.; neurologist Michael Karasek, M.D.; opthalmologist William Spangler, M.D.; neurologist Robert Tearse, M.D.; ophthamologist John Polansky, M.D.; and psychiatrist Bazil Freedman, M.D.
 
 
 8
 Ledgett filed applications for disability insurance benefits under 42 U.S.C. Sec. 423(a), 416(i) and for supplemental security income under 42 U.S.C. Sec. 1383(e) in October 1985. These applications were denied on February 5, 1986, and she did not appeal them.
 
 
 9
 Ledgett filed a second set of applications for disability benefits and for supplemental security income. These applications were denied initially and after reconsideration on the ground that although she could not return to any of her past work, she retained the ability to perform other, less physically and mentally demanding work. Ledgett timely requested review.
 
 
 10
 A hearing was held before an administrative law judge ("ALJ") during which Ledgett was represented by an attorney. After reviewing testimony from Ledgett, a medical expert and a vocational expert and other evidence in the record, the ALJ concluded, based on a number of determinations, that Ledgett was not disabled. Four of those determinations are relevant to this appeal.
 
 
 11
 First, the ALJ determined that although the claimant "has one or more severe medical impairments as defined in the Regulations," she does not have any combination of impairments which meet or equal any of the listings of 20 C.F.R. Sec. 404, Subpart P, Appendix 1. Specifically, the ALJ determined that Ledgett does not have (1) a musculoskeletal or neurological impairment which would meet or equal appropriate neurological or musculoskeletal listings under Section 11.01 et seq. or 1.01 et seq.; (2) a visual impairment which meets or is equivalent in severity to any impairment of special sense under Section 2.01 et seq.; or (3) a mental impairment satisfying the "B" criteria of the Mental Impairment listing under Section 12.08 et seq. Ledgett appeals only the ALJ's determination as to her mental impairment.
 
 
 12
 Second, the ALJ found that "the claimant is not a fully credible witness." In making this finding, he noted that "the claimant has a diagnosed personality disorder, with noted tendencies toward embellishment and secondary gain." He rejected Dr. Kurlychek's and Dr. Freedman's conclusion that Ledgett's behavior was caused by a severe personality disorder that was beyond her control, on the grounds that Dr. Kurlychek was attempting to mislead the court and that Dr. Freedman's conclusion was speculative.
 
 
 13
 Third, the ALJ concluded that Ledgett "has both the exertional and nonexertional capacity to perform all of her past relevant work as she performed it in the national economy." Based on a report made by Dr. Filarski in July 1986, the ALJ determined that the claimant had the exertional capacity within 12 months of her injury to perform "all sedentary, secretarial and light to moderate carrying, lifting and bending activities except as influenced by posterior hip discomfort." With regard to the claimant's mental capacity to work, the ALJ noted the opinion of the medical expert, who testified that Ledgett "could not be expected to work with detailed instructions, but the evidence suggested that [she] needs a highly structured work setting limited decisionmaking [sic] because she would have difficulty with detail." The ALJ did not credit Dr. Kurlychek's or Dr. Freedman's opinion as to the severity of claimant's out of control personality disorder.
 
 
 14
 Fourth, the ALJ determined that the claimant could return to past work, based on the vocational expert's evaluation of a hypothetical question. The ALJ asked the vocational expert to consider the claimant's age, education, and visual impairment. He also asked the vocational expert to assume that the claimant had no other physical impairments, and to evaluate her head injury as a mental disorder. Finally, the vocational expert was asked to "credit the testimony of the [non-examining] medical expert, to the effect that the claimant has a diagnosis of an atypical organic disorder NOS and a personality disorder with borderline features," but also that "the claimant has a mental residual functional capacity consistent with the assessment of limitations set out by the medical expert in his testimony." The hypothetical did not refer to Dr. Kurlychek's or Dr. Freedman's opinions as to the severity of the claimant's personality disorder. The vocational expert also was not asked to consider the medical expert's opinion that the claimant would require a highly structured work setting.
 
 
 15
 The vocational expert concluded that based on the limitations set out by the hypothetical, Ledgett could work as a clerk, care provider, and laundry worker, as she had done in the past. The ALJ accepted the conclusions of the vocational expert and concluded that "the claimant is found capable of performing her past relevant work, and the burden of proof does not shift to the Secretary." The ALJ denied the applications for supplemental security income and disability insurance benefits.
 
 
 16
 Ledgett requested review of the ALJ's decision and submitted a Psychiatric (or Psychological) Review Technique Form ["PRTF"] completed by Dr. Kurlychek in support for her request for review. The Appeals Council denied Ledgett's request, making the ALJ's decision a final decision of the Secretary.
 
 
 17
 Ledgett sought judicial review in district court, which affirmed the Secretary's decision. The district court focused on three issues, concluding that: (1) the ALJ properly relied on the opinion of the non-treating, non-examining medical expert, psychologist Dr. Moulton, and properly disregarded the opinions of Ledgett's treating psychologist Dr. Kurlychek and her examining psychiatrist Dr. Freedman, in concluding that Ledgett did not have mental impairments satisfying at least two of the "B criteria"; (2) there was substantial evidence to support the ALJ's conclusion that Ledgett could perform past relevant work and that she was thus not disabled; and (3) it was unnecessary to decide whether Ledgett could pursue disability insurance benefits or supplemental security income for the period before February 5, 1986 because the ALJ correctly determined that she was not disabled.
 
 
 18
 Ledgett filed a motion to alter or amend the judgment. The district court denied this motion. Ledgett now seeks this court's review of the district court's decision.
 
 II.
 
 19
 Ledgett's first contention is that the ALJ committed legal error in refusing to reopen her prior application for disability insurance benefits, which was denied on February 5, 1986, because she did not receive constitutionally adequate notice that the denial of her application would become final if she did not appeal it. She thus contends that the denial of her prior application for benefits should not be final and binding and "res judicata" for the period prior to February 5, 1986. We agree.
 
 
 20
 In Gonzalez v. Sullivan, 914 F.2d 1197 (9th Cir.1990), this court found that the Secretary's notice of adverse ruling to a disability benefits claimant was deficient because it "does not clearly indicate that if no request for reconsideration is made, the determination is final." Id. at 1203. The initial notice of an adverse decision in Gonzalez included the following language: "If you do not request reconsideration of your case within the prescribed time period, you still have the right to file another application at any time." Id.
 
 
 21
 The Secretary concedes that a Gonzalez notice is not cured of its constitutional defect by merely appending the statement, "A new application is not the same as an appeal of this determination."[1] She contends, however, that the defect is cured, when the notice includes the following language: "You have the right to file a new application at any time, but filing a new application is not the same as appealing this decision. You might lose some benefits if you file a new application instead of filing an appeal. Therefore, if you think this decision is wrong, you should ask for an appeal within 60 days." Id.
 
 
 22
 The notice given to Ledgett is substantially similar to the constitutionally deficient notice given in Gonzalez. Because it does not clearly state that the ALJ's determination will be considered final if she does not appeal, or that she may lose some benefits if she files a new application, rather than filing an appeal, it violates her Fifth Amendment rights. Ledgett should have been allowed to pursue her claims for disability insurance benefits for the period prior to February 5, 1986, when her prior application was denied. Because we conclude that Ledgett is disabled, discussed infra, Ledgett is entitled to receive disability insurance benefits for the period of disability alleged in her October 23, 1985 application.
 
 III.
 
 23
 The claimant's second contention is that the ALJ erred in evaluating the extent of her personality disorder. The ALJ concluded that Ledgett's out of control personality disorder did not cause her documented malingering after the serious accident. He based this conclusion on the evaluation of the medical expert, Peter Moulton, Ph.D., a non-treating, non-examining psychologist, who reviewed the medical evidence, including Dr. Kurlychek's determination that Ledgett intentionally performed poorly on psychometric testing, and her MMPI test was found invalid. The ALJ dismissed Dr. Kurlychek's and Dr. Freedman's opinions that the claimant's behavior was caused by a severe personality disorder that was not within her control.
 
 
 24
 Ledgett contends that the ALJ erred in rejecting the opinions of Robert T. Kurlychek, Ph.D., Ledgett's treating psychologist, and Bazil Freedman, M.D., Ledgett's examining psychiatrist.[2] We agree.
 
 A.
 
 25
 "When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict." Matney on Behalf of Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir.1992) (quoting Allen v. Heckler, 749 F.2d 577, 579 (9th Cir.1984)).
 
 
 26
 "[G]reater weight is afforded to the opinion of a treating physician than to that of [a] non-treating physician, because the treating physician is employed to cure and has a greater opportunity to know and observe the patient as an individual." Ramirez v. Shalala, 8 F.3d 1449, 1453 (9th Cir.1993) (internal quotations omitted).
 
 
 27
 The ALJ may discount the opinion of one treating physician, however, and rely instead on the opinions of other treating physicians, especially when the physician whose opinion is discounted has not provided any support for his opinion in the form of, inter alia, medical findings, personal observations or test reports. Burkhart v. Bowen, 856 F.2d 1335, 1339-40 (9th Cir.1988).
 
 
 28
 The ALJ has a duty to give "specific, legitimate reasons" for rejecting the opinion of a treating physician when that opinion conflicts with that of another physician or with evidence in the record. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir.1989). When the opinion of the treating physician or other medical expert is uncontroverted, however, the ALJ must give "clear and convincing reasons" when rejecting such an opinion. Id. See also Gallant v. Heckler, 753 F.2d 1450, 1454 (9th Cir.1984).
 
 
 29
 In this case, as explained below, the ALJ's decision is not supported by substantial evidence because (1) the opinion of Dr. Kurlychek, Ledgett's treating physician, as to the extent of Ledgett's personality disorder was not controverted; and (2) the ALJ failed to give clear and convincing reasons for disregarding the uncontroverted opinion.[3]
 
 B.
 
 30
 As a threshold matter, we must consider whether the ALJ erred in dismissing Dr. Freedman's opinion as a "speculative recommendation" and whether the opinion contradicts that of Dr. Kurlychek.
 
 
 31
 Dr. Freedman submitted a six-page single-spaced "Comprehensive Psychiatric Evaluation" dated November 19, 1990, in which he details the claimant's identifying data, psychiatric evaluation, review of systems, medical history, developmental history (including her employment, marital, and family histories), her daily activities, mental status, and his diagnosis. Based on this evaluation, Dr. Freedman concludes that:
 
 
 32
 Ms. Ledgett definitely goes to some length to present herself as a "disturbed" individual and this is apparent, not only from the inconsistent findings on mental and cognitive testing, but also from her attitude and communications which seem subtly disposed towards presenting herself as an incompetent person. In reality she comes across as a fairly well-organized and competent person with a particular agenda in mind.
 
 
 33
 However, I am in agreement with the comments made Dr. Kurlychek [sic] in that this lady's "primary difficulty is related to her personality disorder". [sic] Unfortunately, it is in keeping with such a personality disorder that the individual herself, has little, if any insight into how she is perceived. This then serves to, perhaps unnecessarily, take away from the import of her documented head injuries. It thus becomes difficult to accurately judge as to this lady's possible true disabilities, if they exist.
 
 
 34
 In summing up, it does appear that Ms. Ledgett would probably encounter major difficulties in securing and maintaining employment and I would accordingly recommend that she be seen as Unemployable, duration 12 months to indefinite. This opinion is based primarily upon the presence of a marked Personality Disorder, which is viewed as the primary diagnosis.
 
 
 35
 This is not a speculative recommendation. Based on his comprehensive evaluation of the claimant, Dr. Freedman states that he agrees with Dr. Kurlychek's assessment.[4] He explains how the personality disorder distracts from the insight of a patient and the lack of insight takes away from how others could view her serious head injuries. He concludes by stating that all of this creates difficulty in assessing the impact injuries. He does not say that she was not disabled. Thus, the ALJ erred in dismissing the opinion of examining physician Dr. Freedman.
 
 C.
 
 36
 Although Ledgett's other treating physicians opined that Ledgett was physically and mentally capable of performing work, Dr. Kurlychek and Dr. Freedman were the only doctors to address her psychological health or her personality disorder.
 
 
 37
 The district court concluded that because Dr. Kurlychek and Dr. Freedman "disagree about how [Ledgett's personality disorder] affects plaintiff" and have "contradictory" "underlying [bases] for their conclusions that this is sufficiently severe to be disabling," their opinions are in conflict.
 
 
 38
 We disagree. The relevant fact is that both doctors concluded that Ledgett's malingering was due to her personality disorder which she cannot control, and that this conclusion is uncontroverted. Because the opinion of Dr. Kurlychek was uncontroverted, the ALJ was required to give clear and convincing reasons when he rejected it. Gallant v. Heckler, 753 F.2d 1450 (9th Cir.1984).
 
 D.
 
 39
 We must next determine whether the reasons given by the ALJ were clear and convincing.
 
 
 40
 In his decision, the ALJ relied upon Dr. Kurlychek's findings that Ledgett malingered. However, he disregarded Dr. Kurlychek's opinion that Ledgett malingered because of a personality disorder that she could not control and that Ledgett was therefore disabled under the Listings. The ALJ rejected that part of Dr. Kurlychek's medical opinion as unreliable, noting that Dr. Kurlychek did not complete a PRTF and appeared to intentionally attempt to mislead the court.
 
 
 41
 The ALJ justified rejecting Dr. Kurlychek's uncontroverted opinion as to Ledgett's mental impairments on the grounds that "claimant did not exhibit a significant memory problem during her testimony at the hearing," that she "has intentionally given poor performance on psychometric testing," that "her MMPI test has also been found invalid," and that the medical expert recommended evaluating her "only on the objective evidence."
 
 
 42
 In Montijo v. Secretary of Health and Human Services, 729 F.2d 599 (9th Cir.1984), this court held that the ALJ's "observation of the claimant at the hearing, at least in cases involving alleged psychological disability, does not provide a sufficient reason to reject the otherwise uncontroverted medical evidence [regarding claimant's mental impairments]." Id. at 602. "Evidence from physicians ruling out possible [physical] injuries does not contradict evidence from psychiatrists that claimant suffered from a disabling neurotic disorder." Id.
 
 
 43
 Under Montijo, the factors relied upon by the ALJ do not contradict Dr. Kurlychek's opinion. The ALJ failed to give clear and convincing reasons for rejecting Dr. Kurlychek's opinion and failed to properly credit the opinion. The ALJ erred both in failing to recognize Ledgett's mental impairment and in finding that she was "not a fully credible witness."[5]
 
 
 44
 Furthermore, the ALJ clearly erred in stating that because Dr. Kurlychek failed to fill out a PRTF, he was attempting to mislead the court. It is a most serious matter to charge a treating physician who appears in a judicial proceeding convened to determine the health of his patient with attempts to mislead the court. Such a charge could cause irreparable injury to the doctor. The serious damage that the charge creates, requires that the evidence to support the charge must be direct, positive, and certain. It simply cannot be purely speculative as it was in this case.
 
 
 45
 In addition to being unsupported by any credible evidence, the ALJ's accusation is contradicted by the unchallenged assertion that:
 
 
 46
 non-Social Security doctors do not routinely complete Psychological Review Technique Forms, (PRTF's) and that they prefer not to complete such forms, even when asked and payment for the service is guaranteed. Indeed, many doctors categorically refuse to complete such forms, choosing instead to write narrative letters covering the same issues.
 
 
 47
 Because the ALJ did not set forth clear and convincing reasons for thinking that Dr. Kurlychek was attempting to mislead the court, the ALJ's finding that Ledgett is not disabled is not supported by substantial evidence.
 
 E.
 
 48
 Ledgett also contends that the ALJ misinterpreted Dr. Kurlychek's opinion. There are two issues here. First, the parties disagree as to whether Dr. Kurlychek applied the listings requirements to Ledgett's impairments. Second, they disagree as to whether the Secretary had a duty to ask Dr. Kurlychek to clarify that opinion, assuming that Dr. Kurlychek did not clearly apply the listing requirements.
 
 
 49
 We reject Ledgett's contention that Dr. Kurlychek made findings under the listings necessary to make a Step Three determination, but that the record contains a typographical omission of the word "frequent," because, as the Secretary correctly notes, Ledgett has not pointed to any source in the record which establishes, or even gives credibility to, her claim.
 
 
 50
 We also reject Ledgett's contention that the ALJ had a duty to clarify Dr. Kurlychek's opinion where it was not clear that Dr. Kurlychek addressed the listing requirements. Ledgett does not point to any cases which suggest imposing such a duty on the ALJ.
 
 
 51
 Finally, Ledgett contends that Dr. Moulton's opinion should have been discounted and was not substantial evidence because he was a non-treating, non-examining physician.
 
 
 52
 "A report of a non-examining, non-treating physician should be discounted and is not substantial evidence when contradicted by all other evidence in the record." Gallant, 753 F.2d at 1454 (internal quotation marks omitted).
 
 
 53
 In this case, Dr. Moulton's opinion as to the claimant's personality disorder was contradicted by all other evidence on the issue. Although he agreed with Dr. Kurlychek's finding that claimant's primary diagnosis was a personality disorder with borderline features and with Dr. Kurlychek's diagnostic impression that Ledgett had an atypical organic disorder, he disagreed with Dr. Kurlychek's and Dr. Freedman's conclusions as to the severity of these disorders. Thus, the ALJ erred in failing to discount Dr. Moulton's opinion as to the claimant's personality disorder.
 
 IV.
 
 54
 The Secretary contends that the ALJ was entitled to find Ledgett not credible because she exaggerated and embellished her complaints. However, where a claimant testifies that he has the "kind of impairment that would make him unable to function as an employee--in other words, that he has the kind of disability that would make most employers unwilling to hire him," the ALJ "must exercise a delicate discretion in determining whether the claimant's complaints are faked or the product of physical and psychological conditions beyond his control." Polny v. Bowen, 864 F.2d 661, 664 (9th Cir.1988).
 
 
 55
 The ALJ did not exercise any delicate discretion in considering Ledgett's psychiatric personality disorders. Furthermore, the ALJ improperly discounted Dr. Kurlychek's uncontroverted opinion that her mental disability was beyond her control.
 
 V.
 
 56
 Ledgett contends that the hypothetical considered by the vocational expert was incomplete and inaccurate, and thus, that the ALJ erred in relying on the opinion of the vocational expert, who testified from the hypothetical question that Ledgett can return to past relevant work. We agree.
 
 
 57
 "Hypothetical questions posed to the vocational expert must set out all the limitations and restrictions of the particular claimant." Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir.1988) (citing Gamer v. Secretary of Health and Human Services, 815 F.2d 1275, 1280 (9th Cir.1987)). If the ALJ does not properly discredit the findings of a medical expert or treating physician, these findings should also be included in the hypothetical. Id. at 423. " 'If the assumptions in the hypothetical are not supported by the record, the opinion of the vocational expert that claimant has a residual working capacity has no evidentiary value.' " Id. at 422 (quoting Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir.1984)).
 
 
 58
 Because the ALJ improperly discredited Dr. Kurlychek's and Dr. Freedman's opinions as to Ledgett's personality disorder, the vocational expert did not consider this impairment. Thus, the assumptions in the hypothetical are not supported by the record, and the vocational expert's opinion is deemed to have no evidentiary value.[6]
 
 VI.
 
 59
 In summary, it is clear and undisputed from the record that the claimant has a serious mental impairment which she cannot control, which makes her disabled, and which entitles her to disability insurance and social security benefits. It would needlessly prolong the denial of benefits to remand the case for further review. See Winans v. Bowen, 853 F.2d 643, 647 (9th Cir.1987). She is entitled to the benefits claimed in her applications.
 
 
 60
 The district court judgment is REVERSED. This case is REMANDED for award of benefits and attorney's fees.
 
 
 
 *
 This panel unanimously agrees that this case is appropriate for submission without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 Donna E. Shalala is substituted for her predecessor, Louis W. Sullivan, as Secretary of Health and Human Services. Fed.R.App.P. 43(c)(1)
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Although she does not take this position in her reply brief in this case, the Secretary has endorsed this view in her Program Operations Manual System, GN 03109.001 et seq. (May 1993 edition)
 These guidelines, "do not have the force and effect of law, ... [but also] are not of absolutely no effect or persuasive force." Evelyn v. Schweiker, 685 F.2d 351, 352 n. 5 (9th Cir.1982).
 
 
 [2]
 Although Dr. Kurlychek and Dr. Moulton are not medical doctors, they are characterized as "physicians" and their opinions are called "medical opinions" because they are psychologists. See 20 C.F.R. Secs. 404.1513(a)(3) and 416.927(a)(2). See also McAllister v. Sullivan, 888 F.2d 599, 602 n. 3 (9th Cir.1989)
 
 
 [3]
 Ledgett contends that the ALJ should have accorded Dr. Freedman's and Dr. Kurlychek's opinions greater weight because they were Ledgett's treating physicians. We conclude that only Dr. Kurlychek was a treating physician
 Dr. Freedman examined Ledgett once, at the request of the Adult and Family Services agency. There is no indication that this was for the purposes of treatment. Rather, the examination was conducted after the Secretary denied Ledgett's applications initially and upon reconsideration. Thus, Dr. Freedman is an examining, but not treating, physician, and his opinion should not be afforded the weight of a treating physician.
 Dr. Kurlychek examined Ledgett at least five times over the course of the five years directly following her automobile accident for the purposes of treatment. He is thus a treating physician.
 
 
 [4]
 Dr. Kurlychek found that Ledgett "intentionally performed poorly [on a number of tests] in an attempt to over-state her problems and symptoms." He concluded that her behavior was due to a personality disorder, which is "significant and disrupts her functioning, both occupationally and socially, on a daily basis," rather than to any neurological disorder
 
 
 [5]
 See also Bilby v. Schweiker, 762 F.2d 716 (9th Cir.1985); Rodriguez v. Bowen, 876 F.2d 759 (9th Cir.1989). In Bilby, for example, this court rejected the ALJ's claim that there was "no showing of any medically determinable restrictive psychiatric condition," where the uncontroverted opinions of both the treating and consulting psychiatrists stated otherwise, and where those opinions were based on "medically-acceptable clinical diagnoses [or] objective laboratory findings." 762 F.2d at 719 (quoting Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir.1975))
 
 
 [6]
 The hypothetical presented to the vocational expert was also defective because it did not include the fact that the claimant is limited to working in highly structured work settings, as noted by Dr. Moulton